Cleveland **CHOUEST**, Plaintiff-Appellant,

v.

**A & P BOAT RENTALS, INC.**, et al.,
Defendants-Appellees.

No. 71–1696.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1973.

James A. Wysocki, New Orleans, La., for plaintiff-appellant.

Fred E. Salley, Robert B. Acomb, Jr., Maurice C. Hebert, Jr., New Orleans, La., for defendants-appellees.

Royston, Rayzor, Cook & Vickery, E. D. Vickery, Houston, Tex., amicus curiae.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

This case presents an intricate problem in the allocation of the recovery in an action brought by an injured longshoreman against a shipowner under the Longshoremen's and Harbor Workers' Compensation Act (LHCA), 33 U.S.C. § 901 et seq. Because of the difficulty of the questions involved, we granted a rehearing to permit both sides to explore the issues in more depth. Having held the rehearing, we adhere to our original decision reversing the judgment of the district court. For the purpose of clarifying the relationship of this case to Strachan Shipping Co. v. Melvin, 5 Cir. 1964, 327 F.2d 83, and Haynes v. Rederi A/S Aladdin, 5 Cir. 1966, 362 F.2d 345, we withdraw our decision in this cause dated April 10, 1972 and issue the following opinion.

## I.

Cleveland Chouest, a longshoreman, was injured while swinging from the crewboat CARDINAL to an offshore platform. A & P Boat Rentals, the defendant, owned the CARDINAL. Trav-elers Insurance Company, the compensation insurer of Chouest's employer, Buras Contractors, Inc., paid Chouest $4610.61 for medical expenses and compensation on Buras's behalf in fulfillment of Buras's responsibilities under the LHCA. Chouest then hired an attorney to sue A & P as a third party tortfeasor. Travelers intervened in Chouest's suit in an effort to recover the amount of the payments it had advanced Chouest before he brought the action against A. & P. A. & P, the ship-owner, in turn joined Buras, the stevedore, as a third party defendant, seeking to hold Buras liable as indemnitor for any judgment he might have against A & P. Because Travelers was the liability insurer for Buras as well as its compensation carrier, Travelers was obligated to provide a defense for Buras to the third party complaint of A & P. Travelers retained one lawyer to represent *both* of its positions in its lawsuit: (1) its intervention claim for a portion of the proceeds of Chouest's recovery as well as (2) its defense to any liability for Chouest's injuries should Buras be cast as the indemnitor of A & P.

As might be expected, Travelers found itself with conflicting interests in the litigation. The success of its intervention for recoupment of compensation payments depended upon a recovery by Chouest against A & P. Yet its potential liability as insurer of Buras required Travelers to assert certain defenses contrary to Chouest's theory of recovery. As a consequence, the cross-examination of Chouest tended to limit the quantity of recovery and to suggest that Chouest himself was negligent. In addition, Travelers' lawyer cross-examined Chouest in an effort to show that the difficulties Chouest had experienced with his knee were in part the result of a condition pre-existing the injury in litigation.[1] In the end, damages were lim-

---

1. MR. SALLEY:
  Mr. Chouest, who were you working for on January 1968?
    *    *    *    *    *
  Were you working at anytime during that period for Diamond "M"?

CHOUEST:
  Yea, I worked for Diamond "M".
MR. SALLEY:
  What kind of accident did you have on January 2, 1968?

ited compatibly with that theory of pre-existing injury.

■ The sole issue for review today is whether the district court properly denied the claim of Chouest's lawyer that his fee be deducted from Chouest's gross recovery before Travelers, as intervenor, recouped its compensation payments to Chouest.[2] Chouest's lawyer contends that Travelers benefitted from his attorneyship because he created the fund out of which Travelers was paid for its compensation advances to Chouest. Specifically, Chouest's lawyer stresses the adverse role played by Travelers' lawyer at the trial, and insists that it would be unfair not to charge Travelers for the services of Chouest's attorney when Travelers not only did nothing to assist in the recovery by Chouest, but also took steps detrimental to Chouest's cause.

■ To these contentions Travelers has three responses. First, Travelers argues that its attorney did in fact assist Chouest. Second, Travelers points to an oral pre-trial stipulation which arguably guaranteed it reimbursement for the full amount of its advances to Chouest.[3] Travelers explains that this

CHOUEST:
I bumped the front of my leg on the rotary.
MR. SALLEY:
And didn't you subsequently see Dr. Polang for injuries to your left knee?
CHOUEST:
Well, when I see Polang, when I got hurt on Delta Marine, it was for the front of the leg.
MR. SALLEY:
Were you represented by a lawyer at this time?
CHOUEST:
Well, Mr. Alker send me to him, Dr. Polang.
    *    *    *    *    *
MR. SALLEY:
Now, what happened, how did you have an accident [in January of 1968]?
CHOUEST:
I hit the front of my leg on the rotary on the rig. * * * Well, I was—we was coming out of the hold, and I was working motor and we were shorthand . . . and I went down to go to the motor room and check my motor and I —and I tripped and I hit my—front of my leg on the rotary.
MR. SALLEY:
That was your left leg, wasn't it?
CHOUEST:
Yes, sir.
MR. SALLEY:
And when you went to Dr. Polang you complained of pain and injuries to your left knee; is that not correct?
CHOUEST:
Well, I told Dr. Polang it was on the front of my left leg.
MR. SALLEY:
Did Mr. Jansen file a suit for you as a result of this accident in January with Diamond "M"? * * * Did you receive any money from this accident?

CHOUEST:
Well, we settled Diamond "M", I believe I got four or five hundred dollars.

2. Chouest's original brief in this Court asked us to reverse the district court's decision not to reduce Travelers' intervention share by the degree of comparative fault attributed to Chouest at the trial. For the reasons stated in the opinion of the district court, we affirm that court's refusal to reduce Traveler's intervention share along the lines suggested by Chouest.

3. MR. SALLEY:
Your Honor, third party defendant would like to take care of a preliminary matter at this time.
Travelers Insurance Company's intervention has been agreed and stipulated to by and among the parties. The other counsel have agreed to stipulate the amount of $3,290.00 has been paid in compensation, and the amount of $1,320.-61 has been paid in medical expenses for Mr. Chouest.
They have agreed in the event of judgment for plaintiff Travelers Insurance Company is entitled to a judgment over for this amount.
THE COURT:
Give us those amounts again, please.
MR. SALLEY:
The compensation is a total of $3,209 and the medical is an additional $1,-320.61.
THE COURT:
All right. The parties to stipulate; plaintiff so stipulate?
MR. WYSOCKI:
Correct, Your Honor.
THE COURT:
Defendant?
MR. HEBERT:
We will stipulate.

stipulation led it to believe it was free to devote all its efforts to defending the third party complaint against Buras —indeed, that it was free to fire away at Chouest's case against A & P without threat to its right to full reimbursement. The district court explicitly held that Chouest had entered into the stipulation in error. Moreover, there is no reason why Chouest's attorney should have agreed to permit Travelers to recoup its compensation payments in full regardless of the behavior of Travelers's lawyer at trial. Chouest would have nothing to gain, and everything to lose, from such a stipulation. In these circumstances, the proper interpretation of the ambiguous stipulation was that attached to it by the district court: the parties merely agreed that the *amount* of the medical and compensation payments to Chouest was not in dispute, as a means of avoiding the tedious business of putting on witnesses as to evidence of the uncontroverted amounts.

Even if the stipulation be of no effect in warding off Chouest's lawyer's claim for reimbursement, Travelers argues as a matter of law that it should recoup the full amount of its compensation payments, regardless of the position it took at trial. The district court apparently considered that our decision in Haynes v. Rederi A/S Aladdin, 5 Cir. 1966, 362 F.2d 345, prevented reimbursement of a longshoreman's lawyer whenever the employer-intervenor employs its own counsel to protect its position at trial—regardless whether protecting the employer's position has a positive or negative impact on the longshoreman's chances for recovery against the shipowner. The district court awarded Travelers full reimbursement for compensation advances to Chouest and allowed Chouest's lawyer no reimbursement for creation of the recovery against A & P. As we shall explain, the district court read *Haynes* too broadly.

## II.

Section 933 of the LHCA explicitly provides for actions by employers of injured longshoreman against third parties who may be liable in damages.[4] Section 933(e) sets forth the distribu-

---

4. § 933 Compensation for injuries where third persons are liable

(a) if on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

\*    \*_    \*    \*    \*

(e) Any amount recovered by such employer *on account of such assignment,* whether or not as the result of a compromise, shall be distributed as follows:
(1) The employer shall retain an amount equal to—

(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner) ;
(B) the cost of all benefits actually furnished by him to the employee under section 907 of this title ;
(C) all amounts paid as compensation ;
(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative : and
(2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth

tion of the proceeds of any recovery by the employer in a third party action. The employer retains a) his litigation expenses including a reasonable attorney's fee; b) medical expenses and compensation payments made to the employee as well as the present value of these payable in the future; and c) an incentive bonus of 20% of any amount remaining after deduction of litigation expenses, compensation payments, and medical payments. The statute at the same time preserves the longshoreman's right to sue third parties responsible for his injuries, in the hopes of obtaining a recovery higher than the amount of the compensation payments to which he is entitled by the LHCA. Seas Shipping Co. v. Sieracki, 1946, 329 U.S. 85, 101, 66 S.Ct. 872, 90 L.Ed. 1099; Corrado v. Pennsylvania R. Co., 2 Cir.1948, 171 F.2d 73, 75. Unfortunately, there is no legislation establishing a distribution of the longshoreman's recovery in actions which he initiates, as § 933(c) establishes distribution of the employer's recovery against third parties. This casts upon the federal courts the burden of distributing the amount of the longshoreman's recovery.

Twice before today, this Court has considered the proper allocation between a longshoreman and employer-intervenor (compensation carrier) of the proceeds of a longshoreman's recovery against a negligent shipowner, in a situation where the proceeds of the recovery were insufficient to provide both full reimbursement for the employer's compensation payments and the attorney's fee of the longshoreman's lawyer. In Strachan Shipping Co. v. Melvin, 5 Cir.1964, 327 F.2d 83, the longshoreman's gross recovery in his third party action ($30,000)

exceeded the compensation and medical payments by his employer ($27,836.92). The question presented was whether Melvin's attorney would be permitted to collect his 40% contingent fee out of the $30,000 gross recovery before the employer was reimbursed for his advances to the longshoreman. We affirmed the district court's decision to allow Melvin's attorney a $12,000 fee, plus $588.88 in expenses, before the employer was reimbursed for his advances to Melvin. In our decision in *Melvin* we stressed "the age-old equitable principle that one who accomplishes the creation of a fund for the benefit of another is entitled to reimbursement therefrom for the reasonable costs thereby incurred." [5] *Melvin, supra,* 327 F.2d at 85, quoting Voris v. Gulf-Tide Stevedores, 5 Cir. 1954, 211 F.2d 549, 551.

Our later decision in Haynes v. Rederi A/S Aladdin, 5 Cir. 1966, 362 F.2d 345, is consistent with *Melvin's* principle of equitable reallocation, even though it placed limits on the *Melvin* decision. In *Haynes,* we again had before us an employee's third party action which resulted in a recovery greater than the compensation owed but less than sufficient to pay both the employee's attorney fees and the employer's compensation advances to the employee. There we held that the lower court was correct in refusing to allow the employee's attorney to deduct his fee before the compensation insurer was reimbursed out of the gross recovery. In *Haynes,* unlike *Melvin,* the employer's compensation insurer engaged its own attorney who "actively asserted" the compensation insurer's rights as intervenor. The compensation insurer stood along side, and waged war in aid of the injured longshoreman. The compensa-

---

of such excess which shall belong to the employer.

(f) If the person entitled to compensation institutes proceedings within the period prescribed in subdivision (b) of this section the employer shall be required to pay as compensation under this chapter a sum equal to the excess of

the amount which the Secretary determines is payable on account of such injury or death over the amount recovered against such third person.

5. See also Restatement of Contracts, Section 72(a); L. Simpson, Handbook of the Law of Contracts, Section 39.

tion insurer's "own counsel were responsible, at least in part, for the reimbursement allowed it." 362 F.2d at 351. Distinguishing *Melvin*, we said the crucial fact there was that "the compensation insurer was not represented by its own counsel during the trial of the third party suit, and thus the attorneys for the injured workman were solely responsible for the fund which ultimately benefitted the insurer." 362 F.2d at 351 n. 13.

■ The peculiar posture of the present case places it within the ambit of *Melvin* rather than *Haynes*. Though counsel for Travelers participated actively in the trial, Chouest's attorney, like Melvin's attorney, *found himself carrying the entire burden of proving the long-shoreman's claim for recovery.* Travelers had reason both to support and oppose Chouest's claim. Yet—perhaps because of an erroneous belief that the pretrial stipulation guaranteed its recoupment—Travelers adopted a position at the trial that was wholly adverse to that of Chouest. Travelers candidly admits that "the main concern of counsel was to defend and exonerate Buras Contractors, Inc. from the third party demand filed by defendant A & P Boat Rentals, Inc. for indemnity." The record bears out this statement. Despite his contentions to the contrary, Travelers' counsel at best did nothing to assist Chouest's case against A & P; *Melvin, supra.*[6] Through

cross-examination of Chouest, Travelers' counsel dealt a damaging blow to the quantum of Chouest's recovery. It offends both our prior decisions and the spirit of fairness which they embody to suppose that Travelers could hammer away at the plaintiff's case without paying a reasonable fee for the services of the plaintiff's lawyer which resulted in Travelers's financial benefit. We hold that an employer-intervenor who benefits from the plaintiff's recovery against a shipowner must compensate the plaintiff's lawyer for his efforts when, as here, the employer-intervenor's counsel, by virtue of his client's third party defense, adopts a position at the trial which is totally adverse to the plaintiff's cause.

From a subjective point of view, it is possible to deny that the employer benefits from the efforts of the plaintiff's lawyer. As Judge Mansfield put it:

It cannot be said that [the employee's lawyer] undertook to render services for the benefit of the employer or its compensation carrier, since their interests were adverse to those of plaintiff and they in fact opposed plaintiff's suit, thereby negating any inference that they considered plaintiff's attorney to be acting for them.

*Russo v. Flota Mercante Grancolombiana,* S.D.N.Y.1969, 303 F.Supp. 1404, 1407.[7]

But we cannot agree that the employer's interests are entirely adverse to

---

6. Counsel for Travelers argues strenuously that he did at least as much as Chouest's lawyer at the trial to ensure Chouest's recovery. The record does not bear out this assertion. In addition to his damaging cross-examination of Chouest, counsel for Travelers interposed numerous objections to questions asked by Chouest's lawyer. In his examination of the witness Barrios, the attorney for Travelers elicited information tending to show that Chouest had swung from the boat to the platform at a time when the boat was too low in the water to swing safely. The only occasion during the trial when the attorney for Travelers was not actively undercutting Chouest's case was during his examination of the CARDINAL's

captain. But this examination showed only that A & P, rather than Buras, was in control of the CARDINAL at the time of the accident, an obvious fact and one of little value to Chouest's efforts to prove negligence.

7. See also Strachan Shipping Co. v. Melvin, *supra,* 327 F.2d at 90 (dissenting opinion of Brown, J.) :

. . . [I]t is going too far too fast to suppose that while the employer may recoup part or all of his compensation payments out of the recovery, the suit was in any sense instituted in his behalf, or for his benefit, or for that matter, he wanted it at all.

those of the plaintiff-employee, and we see no basis for believing that the position taken at trial by the employer is any reliable indication of complete adversity.[8] At least on the facts before us, the employer of his carrier has divided loyalties; that is the crux of the problem. Especially when his compensation payments to the injured employee have been sizeable, the employer or his carrier will want to recoup those payments from the shipowner if it is possible to do so. Recoupment depends directly upon the success of the employee's action against the shipowner. The employer will also want to protect himself from a claim for indemnity asserted against him by the shipowner. That position may compel him to assert defenses and to develop evidence tending to defeat or to limit the employee's recovery. If the employer weighs his interests, decides that he is more concerned to defend

himself from the shipowner's claim for indemnity, and takes that course of action at trial, his interests temporarily appear adverse to those of the plaintiff. When the dust settles, though, and the employer accepts a check for the amount of his compensation advances to the employee, he suddenly discovers that his interests are not entirely adverse to those of the employee plaintiff after all. The proof is in the pudding:[9] the labors of the plaintiff's lawyer have put the employer in a better financial position than he was in before the litigation began. Of course, if the lawsuit results in no financial benefit to the employer, there is no pudding, and no need for reimbursement of the plaintiff's lawyer. Ballwanz v. Jarka Corporation of Baltimore, 4 Cir. 1967, 382 F.2d 433.

Nor are we dissuaded from requiring compensation of the employee's lawyer

8. The 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act have reduced, though not entirely removed, the conflict of interest between the plaintiff and the intervenor in third-party actions such as the present case. As amended, Section 5(b) of the Act now prohibits longshoremen from founding their claims against the vessel on the warranty of seaworthiness. Rather, the vessel is to be liable only for negligence. In the event a longshoreman is able to prove negligence against the vessel, the amendments insulate the stevedore from all indemnity, even where there is an express indemnity agreement between the vessel and the stevedore.

In all future cases, then, the plaintiff and the intervenor will have a substantial area of common interest. Both will attempt to demonstrate the vessel's negligence: the plaintiff, because this is the only method by which he can recover damages; the intervenor, because proof of the vessel's negligence will foreclose the danger of the stevedore's being held liable and will thereby ensure the intervenor's recoupment.

But a conflict may persist as to the extent of the injured longshoreman's disability. Section 33(f) of the LHCA, 33 U.S.C. § 933(f) (1972), permits a longshoreman to assert a further claim for compensation after the conclusion of the

third-party action if the recovery from the third party, together with the amounts already paid in compensation, falls short of the amount to which the longshoreman is entitled under the LHCA. For fear of being liable for further compensation payments, then, an intervenor in the position of Travelers even after the 1972 amendments would have to minimize the longshoreman's disability. Thus the plaintiff and the intervenor will be united on the question of liability but opposed on the question of damages.

9. We see no reason why the subjective motivations of the employee's lawyer, or the pre-litigation fears and desires of the employer, should affect the distribution of the proceeds of a successful action against the shipowner. The significant question is whether the employer actually benefits from the employee's recovery, and whether he should reimburse the lawyer but for whose efforts a sizeable amount of money might not have come the employer's way. Whether an employer thinks or predicts he may profit from an employee's suit against a shipowner, and whether the employee's lawyer is truly or sincerely acting on behalf of the employer when he initiates litigation for the employee have no proper place in the resolution of the problem before us.

by the suggestion that compensation payments to the employee create a lien in favor of the employer enforceable without intervention. See Ballwanz v. Jarka Corporation, *supra*; Russo v. Flota Mercante Grancolombiana, *supra*; Riddick v. Rederi A/B Fredrika, E.D. Va.1967, 271 F.Supp. 360. The employer still derives his reimbursement from the fund created by the employee; and the employee's lawyer devotes his efforts to creation of the employee's fund. Lien or no lien, there could be no recovery by the employer were it not for the efforts of the employee and his lawyer.

Nothing we say requires an employer-intervenor to refrain from asserting its third party defense, or in any sense burdens his due process right to defend himself from third-party liability. The company made its choice at trial: to devote its own efforts to exonerating Buras and to hitch a ride on the coattails of Chouest's lawyer for the compensation payments. Having made that choice, and having successfully hitched its ride with Chouest, our decision requires Travelers simply to pay what is due to those who helped the company along.

## III.

Having decided, then, that some reallocation is necessary in this case to provide fair treatment as between the intervenor, on the one hand, and the plaintiff and his lawyer, on the other, we turn to the potential conflict between the interests of the plaintiff-employee and those of his attorney.[10] The conflict is one to which we must be equally attentive, for at some point, treatment of the employee's attorney can become so favorable as to divert to the attorney the lion's share of the employee's potential recovery against third parties. Were that division of the spoils to become the rule, the employee's right of action against third parties, carefully preserved by Congress, would be worth little to the injured employee.[11]

Our task, then, is to discover a division of the recovery which is a) fair to plaintiff's lawyer and b) fair to the injured workman himself. For the rea-

10. The district court adverted to this problem when it invoked "equitable principles" as an alternative ground for its refusal to compensate Chouest's lawyer out of Travelers' recovery. See *Haynes, supra*, 362 F.2d at 351:

. . . Appellant's [Haynes'] attorneys candidly admit that appellant would derive very little benefit from the holding sought; rather it is appellant's attorneys who stand to gain. And it is crystal clear that appellant's attorneys have no common interest with [the intervenor] in this litigation. . . . It would indeed be difficult to conceive of a situation in which the trial court, exercising 'careful supervision' and giving 'proper consideration to the equitable principles involved,' as *Melvin* states it must, would be more justified in denying attorney's fees to the injured workman's counsel.

Our decision today eliminates the conflict between the employee and his lawyer, and thus makes it unnecessary for us to consider whether reallocation would be appropriate on the facts before us were a *Melvin*-style allocation the only one permissible.

11. It is important to note the interrelation between the question whether the intervenor should compensate the plaintiff's lawyer and the question how that compensation should be calculated. A formula for determining the amount and method of compensation for the plaintiff's lawyer may result in unfair treatment for the plaintiff himself; see *Melvin, supra* (dissenting opinion of Judge Brown). At the same time, the erroneous assumption that the only means of compensating the plaintiff's lawyer is unfair to plaintiff himself will exert undue pressure against formulation of a rule which permits compensation for the plaintiff's lawyer in appropriate circumstances. The two considerations go hand in hand; proper understanding of the one is essential to proper understanding of the other.

sons so well stated by Judge Brown in his dissenting opinion in the *Melvin* case,[12] we conclude that the particular formula for reallocation approved by the court[13]

12. As Chief Judge Brown wrote, "Application of the *Melvin* rule means that the difference to the injured worker—in whose behalf the plaintiff's counsel has been employed and whose interests are presumably close to his professional heart —stands to lose, while his counsel stands to gain, over $11,000." Judge Brown went on to demonstrate that he had derived this observation by comparing the formula in the *Melvin* case with a formula he attributed to *Fontana* and *Davis*; see note 9, *infra*.

| Melvin Rule | | Fontana-Davis Rule | |
|---|---|---|---|
| Recovery | $47,316.32 | | $47,316.32 |
| Less: 40% Atty. fees | 18,926.52 | Less: Compensation Paid | 27,836.92 |
| | $28,389.80 | | $19,479.40 |
| Less: Att. expenses | 552.88 | Less: 40% fee | 7,791.36 |
| | 27,836.92 | | 11,688.04 |
| Less: Employer's payments | 27,836.92 | Less: Atty. expenses | 552.88 |
| Worker receives | 0.00 | Worker receives | $11,135.16 |

With deference, we suggest that what Chief Judge Brown described as the *Fontana-Davis* Rule is not, in fact, borne out by those cases. His rule is, rather, one which simply allows the employer his compensation payments from the top of the recovery fund, as the district court did in the present case. See Ashcraft and Gerel v. Liberty Mutual Ins. Co., 1965, 120 U.S.App.D.C. 51, 343 F.2d 333 for an additional but expressly limited application of the ersatz "*Fontana-Davis*" Rule.

———————◆———————

13. *See also* Fontana v. Pennsylvania R. Co., S.D.N.Y.1953, 106 F.Supp. 461, aff'd mem. 2 Cir., 205 F.2d 151, cert. den. sub nom. Fontana v. Heron Stevedoring Corp., 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390. *Accord*, Davis v. United States Lines Co., 3 Cir. 1958, 253 F.2d 262. *Fontana* involved a $4000 third party settlement by the plaintiff longshoreman, who had received $1732.54 in compensation payments from the intervenor-employer. The court held that attorney's fees and litigation expenses should be deducted first from the gross recovery; that the employer should then recover the full amount of his compensation payments; and that the balance should be paid to the plaintiff-employee. Litigation expenses and attorney's fees, said the court, should be a first charge on the fund whether the employer or the employee initiated the suit against the third party tortfeasor.

*Fontana* squares with our concern with fair reimbursement for lawyers who represent injured employees in third party actions. Indeed, our decision in *Melvin* can be viewed as simply an application of the *Fontana* approach: the cost of litigation was deducted as a "first charge against the fund." *Fontana*, supra, 106 F.Supp. at 464. The rationale of *Fontana* was that there should be the same distribution of the fund when the employee is plaintiff as there is when the employee passes up his right to sue in his own name and the employer takes up the cudgel. *Fontana* itself provided no explanation for this policy of mutuality; *Davis* invoked the "symmetry and logic" of the statute. It is true that, according to our holding today, an employee would recover more as plaintiff than he would as the residual beneficiary of an employer's action. Similarly, the employer recovers less as intervenor than as the named party plaintiff. But there is no anomaly in this disparity; the initiating party—employee or employer—bears the risk of counsel fees and litigation expenses in the event no recovery at all is won. See Ballwanz v. Jarka

does not provide treatment for the long-shoreman sufficiently advantageous to preserve the third party action as a viable alternative open to the injured long-shoreman.[14]

We do not feel compelled to choose between the inequities of the *Melvin* formula, on the one hand, and the inequities of an altogether contrary rule on the other. Congress has not spelled out a formula for dividing the recovery in employee-initiated third party actions. Perhaps it did not do so because it could foresee the variables outlined in the preceding part of our opinion today, and concluded that detailed statutory treatment would be inappropriate. Until Congress does provide a specific formula, it is our responsibility to divide third party recoveries in the manner we feel best accords with the purpose of Congress in enacting the LHCA—to provide a swift and efficient compensation scheme for maritime workers while preserving intact a viable right of damages against third parties for sums beyond those minimum sums authorized as compensation.

■ We hold that the gross recovery by Chouest must be divided so as to tax both Chouest and the intervenor Travelers for their proportional shares of litigation expenses—including both attorney's fees and other costs and fees. The recovery should be divided according to the following plan, assuming for purposes of clarity that Chouest's attorneys operated under a 33⅓% contingent fee agreement, and that other expenses of the suit approximated $1000:

| | |
|---|---|
| 1) Total (gross) recovery | $4959.00 |
| 2) Gross share of Travelers (amount of compensation and medical payments advanced to Chouest) | 4610.61 |
| a) Less: 33⅓% attorney's fee payable to Chouest's lawyer | 1536.87 |
| | $3073.74 |
| b) Less: 93% of other litigation expenses (93% = $\frac{4610.61}{4959.00}$) | 930.00 |
| c) Travelers' net recovery | $2143.74 |
| 3) Gross share of Chouest | 348.39 |
| a) Less: 33⅓% atty fee | 116.13 |
| | $ 232.26 |
| b) Less: 7% of other litigation expenses (7% = $\frac{348.39}{4959.00}$) | $ 70.00 |
| c) Chouest's net recovery | $ 162.26 |

According to this formula, both Chouest and Travelers pay attorney's fees and

Corporation, *supra*. This risk justifies the disparity between the recovery of the employee as plaintiff and the employee as residual beneficiary. Indeed, the 20% bonus for plaintiff employers may be seen as Congressional recognition of the need to enhance the reward of the party plaintiff to account for the increased risk borne by that party and that party alone. In short, when the injured employee takes upon himself the role of plaintiff, he undertakes a measurable risk; and it is no fortuity, no anomaly, that his compensation vary slightly depending upon his posture in a particular lawsuit. When the employer-intervenor shares the risk of failure, see *Haynes, supra*, no reallocation is required.

14. Congress has indicated its own concern with providing the injured employee a reward sufficient to dispel his fears that the proceeds of a successful recovery will be divided between the lawyer and his employer. The Federal Employees' Compensation Act creates a specific schedule for distribution of funds recovered from third party tortfeasors in litigation instituted by the federal employee on his own initiative. The United States, as employer, shares in the recovery to recoup its compensation payments. 5 U.S.C. § 8132. Section 8132 was amended in 1966 to create a guaranteed share of a recovery fund for the plaintiff-employee. This change was intended to eliminate the bias in favor of the government and the plaintiff's lawyer which the previous law created. At the same time, it should be noted that the formula of section 8132 does not disturb the prior practice of awarding the plaintiff's lawyer a reasonable fee as a first charge against the gross recovery fund. Our decision today embodies an equitable, no-statutory approach to the division of a private employee's recovery; as such, our decision could never achieve the precision of a statutory allocation. We believe, however, that today's decision closely parallels the evaluation of Congress as it is embodied in section 8132.

litigation expenses in proportion to their recoveries.[15] Chouest's attorney seems to receive more than Chouest himself; but Chouest has recovered the excess of his gross recovery over the compensation and medicals previously advanced to him, less a fair attorney's fee *on that* *excess* and a pro rata share of the litigation expenses.[16] If the excess recovery had been larger, Chouest would pocket $2/3$ of every additional dollar of the judgment—assuming, of course, that litigation expenses remained about the same.[17]

---

15. We think the fairness of this scheme for allocation of the recovery emerges from comparison of this calculation with those approved in *Haynes* and *Melvin*, *supra*, respectively.

*Haynes* formula (applied to present case)

| | |
|---|---|
| 1) Total (gross) recovery | $4959.00 |
| 2) Gross share of Travelers | 4610.61 |
|     a) Less 0 attorney's fees | |
|     b) Less 0 expenses of litigation | |
|     c) Travelers' net recovery | 4610.61 |
| 3) Gross share of Chouest | 348.39 |
|     a) Less 33⅓% attorney fee | 116.13 |
|     b) Less 100% of other litigation expenses | 1000.00 |
|     c) Chouest's net recovery | ($767.74) |

*Melvin* formula (applied to present case)

| | |
|---|---|
| 1) Total recovery (gross) | $4959.00 |
| 2) Less: 33⅓% attorney's fee | 1653.00 |
|     (Chouest's lawyer) | |
| | $3306.00 |
| 3) Less: other litigation expenses | 1000.00 |
| | $2306.00 |
| 4) Less: Travelers' advances to Chouest | 4610.61 |
|     (Travelers' share=$2306.00) | |
| 5) Chouest's share | $0000.00 |

The *Haynes* formula (no reallocation at all as between Travelers and Chouest's lawyer and Chouest) saddles Chouest with all litigation expenses and frees Travelers from the burden of compensating Chouest's lawyer for his services. Of course, it would be appropriate that Chouest's lawyer not be compensated were the facts of *Haynes* those of the case before us. The *Melvin* formula, as Chief Judge Brown has said, advances the interests of Chouest's lawyer over those of Chouest himself. As a result, to embark upon a *Melvin* reallocation would be contrary to the concern of Congress with assuring a fair shake for the longshoreman by preserving in him a meaningful right of action against third-party tortfeasors.

---

16. Part of the lawyer's fee, moreover, may go to defray the expenses incurred in pressing the longshoreman's workmen's compensation claim. Plaintiffs' lawyers often handle compensation claims without a fee, in the hope of later obtaining a fee by representing the same plaintiffs in third-party actions.

17. In its brief as amicus curiae on rehearing, the Texas Employers' Insurance Association contends that this reallocation is unfair in two respects. First, the amicus points out that in certain circumstances the entire recovery might be allocated to the plaintiff's attorney, with nothing left over for either the plaintiff or the intervenor. This might have occurred if Chouest had been found 75% negligent, rather than 25%. The recovery would have been reduced to approximately $1,500, which would just cover the plaintiff's attorney's expenses ($1,000) and fee ($500). We have no occasion in the present case to decide whether the equita-

Reallocation need be undertaken only in very limited circumstances. *Melvin*, of course, required reallocation where the intervenor never even retained counsel to represent it, and thereby threw the entire burden of the litigation onto the plaintiff's attorney.[18] In the present case we hold that reallocation is likewise mandated where the intervenor's attorney contributes nothing of material assistance to the plaintiff's case, and instead devotes his efforts to undermining it. The likelihood of the intervenor's attorney adopting such a stance is slight, particularly since the 1972 amendments to the LHCA give the plaintiff and the intervenor substantial common ground. In all other cases the rule of *Haynes* applies. And the question of reallocation will never even arise in the majority of cases, where the amount of recovery is sufficient both to reimburse the intervenor and pay the plaintiff's attorney. But courts must resolve the unusual as well as the ordinary case. On the facts of this case, we hold that the appropriate remedy is to reallocate the recovery in the manner which we have detailed.

The judgment of the district court as to the distribution of the recovery as between Travelers and Chouest is reversed, and the cause remanded with instructions to enter judgment consistent with this opinion.

ble principles embodied in *Melvin* and *Haynes* would dictate allocation of the entire recovery to the plaintiff's lawyer in such circumstances. But in a case such as the present case, where the intervenor has attempted to thwart the plaintiff's recovery at every turn, the intervenor is in no position to complain if the recovery proves to be insufficient to reimburse it. And the danger that the plaintiff himself will not recover is far greater under both the *Haynes* and *Melvin* formulations, each of which would prevent Chouest from obtaining anything from his $4959 gross recovery. See note 15 *supra*.

Second, TEIA argues that this formula for reallocation gives the plaintiff's attorney an incentive to litigate rather than settle, even when the plaintiff's best interests would be served by a settlement, since the plaintiff's attorney has a guarantee that he will receive his fee as well as his expenses before the plaintiff or intervenor recover anything. But realloca-

tion is founded on equitable principles, and a court might well invoke considerations of equity to deny reallocation to a plaintiff's lawyer who refused a settlement in bad faith. And the danger that a plaintiff's lawyer would be tempted to risk litigation in order to reap its rewards for himself is minimal. The lawyer's scheme for self-enrichment would bear fruit *only* if the intervenor either stayed out of the case altogether, as in *Melvin*, or took a completely hostile position at the trial and did nothing to assist in the plaintiff's recovery, as in the present case. This is especially unlikely given the 1972 LHCA amendments, since the intervenor will now have every incentive to assist the plaintiff in proving the vessel's negligence.

18. Reallocation would, however, presumably be improper if the plaintiff and the intervenor entered into a clear and unequivocal stipulation excusing the intervenor from participation in the trial.