300

Leonard LAMAR and John Miller,
Plaintiffs-Appellees-Cross
Appellants,

v.

ADMIRAL SHIPPING CORPORATION,
Defendant-Third-Party Plaintiff-
Appellant-Cross Appellee,

v.

SHAW COMPANY, Third-Party Defend-
ant-Appellee.

No. 72–2097

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 22, 1973.

Rehearing Denied April 26, 1973.

John H. Schulte, Miami, Fla., for appellant.

Arthur Roth, Miami, Fla., for Leonard Lamar and John Miller.

Richard F. Ralph, Miami, Fla., for Shaw Co.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

We are called upon once again to determine whether a shipowner, having paid damages for personal injuries suffered by a longshoreman on board its vessel, may recover indemnity from the longshoreman's stevedore employer on the theory that the stevedore breached its WWLP.[1] The district court dismissed the third party complaint on the merits. We reverse.

Plaintiffs Lamar and Miller cross-appeal from the district court's refusal to apportion their attorneys' fees so that they would be borne by the plaintiffs and the compensation carrier for whose benefit the fund was created. We affirm.

Lamar and Miller were employed by Shaw as longshoremen to discharge cargo from the M/V NICA, owned by Admiral. The vessel was equipped with an aluminum accommodation ladder or gangway approximately thirty feet long and thirty inches wide with thirty steps. It was affixed to a turntable at the top with a through bolt, and the turntable was held in place with through bolts and plate. The base rested level on the cement apron of the dock on a roller. The steps were level.

In the early morning a Boarding Clerk, Immigration Officer, Customs Officer, Public Health Officer, and Department of Agriculture Officers used the gangway without incident. O'Brian, the stevedore superintendent for the discharging of cargo, inspected the gangway and found it to be bowed from top to bottom, eight to twelve inches out of alignment almost midway its length. At 0800 hours two gangs of longshoremen totaling twenty-two men proceeded single file up the ladder. Eight or nine men were on the gangway when it tipped over injuring the plaintiffs.

O'Brian told the chief officer that the gangway had tipped over because of the bow in it together with the weight of the longshoremen and ordered a safety line installed to prevent the gangway from tipping over again. A sign was posted limiting the use of the gangway to one person at a time.

The district court found that the ship's gangway was slightly bowed and that it tipped while plaintiffs were on it; that the vessel was unseaworthy by reason of the condition of the gangway; and that the plaintiffs were injured as a proximate result of the unseaworthiness. These findings are not attacked on appeal.

With respect to the indemnity question the district court found:

> The stevedore's superintendent saw the slight bow in the gangway even before he, his company's boarding clerk, and the government boarding officials used it to both board and leave the vessel. The gangway appeared to him to be in good repair and

1. Warranty of Workmanlike Performance. Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp., 1952, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. The problems of indemnity and attorney fee allocations spawned by *Ryan* are now largely put to rest by the 1972 Amendments to the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C.A. § 901 et seq.

safe because it was affixed at the top to the vessel, it rested evenly on the level concrete block, and its steps were even.

In my view, there was an adequate basis for the superintendent's conclusion, and his failure to take steps to secure the gangway with lines or to limit the number of persons using it at one time did not amount to a breach of the stevedore's warranty of workmanlike performance.

■■ We are of the opinion that the district court improperly dismissed the action over against the stevedore. The legal principles to be applied in determining the question of liability for indemnity for the breach of the WWLP are now so well settled that we forego a discussion of them at length. It is enough to say that in the factual context of this case even though the vessel's equipment is unseaworthy, "if the stevedore brings this condition into play, he is liable to indemnify the owner for any damages which may be sustained because of the breach of warranty." Crumady v. "The Joachim Hendrik Fisser," 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L. Ed.2d 413. But the stevedore is chargeable only with knowledge of defects discernible by a reasonable, but cursory, inspection and is not responsible for latent defects. Vaccaro v. Alcoa Steamship Co., 2 Cir. 1968, 405 F.2d 1133. See Delaneuville v. Simonsen, 5 Cir. 1971, 437 F.2d 597. "There is a related rule that defects which are in fact observed cannot be overlooked. If the stevedore has knowledge of a defect it should correct it or require it to be corrected by the ship's officers." T. Smith & Son, Inc. v. Skibs A/S Hassel, 5 Cir. 1966, 362 F.2d 745.

It is undisputed that the gangway was bowed almost midway from eight to twelve inches. It was not a latent defect but was observed by the stevedore superintendent who thought it was "slightly unusual." He had never seen a bow in a gangway before.

■ The stevedores, through the superintendent, "rendered a substandard performance which led to foreseeable liability" of the vessel. Their standard of performance has been succinctly defined —"to do the job properly and safely." Ryan, supra. This standard is not met when the stevedore's superintendent is placed on notice that a gangway, which is to be used by longshoremen to board the vessel, is obviously bowed out of alignment in an unusual manner so that it would likely be unstable. Even the stevedores' marine surveyor could do no better than opine that he could see nothing drastically wrong with the condition of the gangway and that it was not excessively dangerous. But drastic and excessive conditions are not the measure of performance under the WWLP. When both experts' testimony is considered, with only a cursory glance at the photographs of the gangway, the conclusion is inescapable that the superintendent should have taken steps to properly discharge his duty to further inspect. The fact that the gangway is secured at the top to the vessel and is riding evenly on the ground surface does not indicate that it is safe and stable when it is obviously bowed in the middle. "In short, he must not assume that a safe condition exists when he has notice that such may not be the case; and his judgment is not vindicated by the fact that three men used the ladder without incident before the accident." Smith v. Jugosalvenska Linijska Plovidea, 4 Cir. 1960, 278 F.2d 176, 181.

It follows that the judgments dismissing the third party action on the merits must be reversed.

We now turn to the cross-appeal of plaintiffs Lamar and Miller. They concede that Liberty Mutual Insurance Company, insurers of Shaw Company, is entitled to a lien for the full amounts expended by it for compensation and medical benefits under the Longshoremen's Act, but they cross-appeal contending that the Florida Compensation Act, § 440.39 F.S.A., should be applied

so that the insurance company will bear its equitable share of the legal fees and expenses of litigation. Alternatively, relying on Cleveland Chouest v. A & P Boat Rentals, 5 Cir. 1973, 472 F.2d 1026, the cross-appellants argue that since their attorney created the fund for the benefit of Liberty Mutual, and since its counsel contested, on behalf of the third party defendant, the damages sought by the cross-appellants, their attorney is entitled to reasonable fees to be paid out of the fund. We think neither position is sound.

 It is plain from the record that the payments for compensation and medical benefits were made to the cross-appellants under the Longshoremen's Act. The Florida Workmen's Compensation Act is wholly inapplicable. Thus, its provision for an equitable apportionment of legal fees and expenses is of no moment.

*Chouest* is inapposite here for two reasons. First, Lamar and Miller stipulated that from their recoveries the medical and compensation payments received by them would be repaid to Liberty Mutual, free of any claim for attorneys' fees. Second, Miller was awarded $3,021.65 for medical expenses, lost wages, and general damages with the proviso that Liberty Mutual had a lien of $1,640.65 to be deducted from the award. Lamar was awarded $15,272.60 for medical expenses, lost wages, and general damages, with the proviso that Liberty Mutual had a lien of $5,792.39 to be deducted from the award. *Chouest* does not stand for the broad proposition posited by cross-appellants. The reallocation principles it established "need be undertaken only in very limited circumstances". 472 F.2d at 1037. *Chouest* was concerned with

> the proper allocation between longshoreman and employer-intervenor (compensation carrier) of the proceeds of the longshoreman's recovery against a negligent shipowner, in a

situation where the proceeds were insufficient to provide both full reimbursement for the employer's compensation payments and the attorney's fee of the longshoreman's lawyer.

472 F.2d at 1030.

 In the instant case, the question of reallocation does not arise because it is clear "the amount of the recovery is sufficient both to reimburse, the intervenor and pay the plaintiff's attorney." 472 F.2d at 1037.

The judgment of the district court dismissing the third party actions on the merits is reversed with directions to enter judgment for Admiral against Shaw. The judgment of the district court denying an allocation of plaintiffs' attorneys' fees between plaintiffs and Liberty Mutual is affirmed.

Affirmed in part and reversed in part.