**William E. BLOOMER, Jr.,
Plaintiff-Appellant,**

**Liberty Mutual Insurance Company, as
subrogee of Connecticut Terminal
Company, Intervenor-Appellee,**

v.

**C. Y. TUNG and Eckert Overseas
Agency, Inc., Defendants.**

**No. 1187, Docket 78-7204.**

United States Court of Appeals,
Second Circuit.

Argued June 22, 1978.

Decided Oct. 13, 1978.

New York City, of counsel); Douglas A. Boeckmann, New York City, on the brief.

Kirlin, Campbell & Keating, New York City, for defendants.

Before LUMBARD and MANSFIELD, Circuit Judges, and HOLDEN, District Judge.*

PER CURIAM:

The plaintiff longshoreman settled his personal injury claim against the shipowner in the amount of $60,000. Prior to settlement the intervenor, Liberty Mutual, as the workmen's compensation carrier for the stevedore-employer, had paid the longshoreman $17,152.83 in compensation benefits and medical expenses under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* The question for review is whether the intervenor's reimbursement from the settlement fund must be reduced by a proportionate share of the longshoreman's costs, including the fees of his attorney. Judge Tenney denied the plaintiff's motion to apportion. The court ordered full reimbursement to the intervenor after deduction of the plaintiff's attorney's fees, none of which was charged to the intervenor. The remainder of the settlement funds then were awarded to the plaintiff as additional compensation.

The plaintiff appeals from that aspect of the order of the district court which held that the insurer was not required to pay a proportionate share of the plaintiff's legal fees but must be reimbursed in full for its lien of $17,152.83. Since we are persuaded that the district court correctly construed the Longshoremen's and Harbor Workers' Act, 33 U.S.C. § 933, as amended in 1972 by P.L. 92 576, 86 Stat. 1262. we affirm.

Prior to the 1972 amendment an injured longshoreman had a right of recovery against the shipowners for breach of warranty of seaworthiness, without establishing fault against the ship. *Seas Shipping*

Shafter & Shafter, New York City, for plaintiff-appellant (Rassner, Rassner & Olman, New York City, of counsel); Alan C. Rassner, New York City, on the brief.

Semel, McLaughlin & Boeckmann, New York City, for intervenor-appellee (Douglas A. Boeckmann, and John M. DelliCarpini,

---

* Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

*Co. v. Sieracki,* 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Later the developing law in this area afforded the shipowner an opportunity to seek indemnity from the stevedore for breach of the stevedore's warranty of workmanlike performance owing to the ship. *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 134, 76 S.Ct. 232, 100 L.Ed. 133 (1956). These judicial antecedents to the 1972 amendment had the effect of imposing strict liability on the stevedore for the personal injuries suffered by its employee. The consequent circuity of claims increased the expense incurred by the employer and decreased the ultimate compensation received by the injured longshoreman. *Valentino v. Rickners Rhederei, G.M.B.H., SS Etha,* 552 F.2d 466, 468 (2d Cir. 1977). Conflicts of interest between the worker and the employer intensified, making the stevedore an adversary against the employee's recovery from the third party responsible for the injury. *See Id.* at 470. *Russo v. Flota Mercante Grancolombiana,* 303 F.Supp. 1404, 1407 (S.D.N.Y.1969).

In 1972 the Congress became mindful of these consequences and, particularly, the growing inadequacy of the levels of compensation received by the injured workmen, resulting from the heavy drain imposed on the employer's resources by reason of third party litigation.

> The Committee heard testimony that the number of third-party actions brought under the *Sieracki* and *Ryan* line of decisions has increased substantially in recent years and that much of the financial resources which could better be utilized to pay improved compensation benefits were now being spent to defray litigation costs. Industry witnesses testified that despite the fact that since 1961 injury frequency rates have decreased in the industry, and maximum benefits payable under the Act have remained constant, the cost of compensation insurance for longshoremen has increased substantially because of the increased number of third party cases and legal expenses and higher recoveries in such cases.

H.Rep.No.92–1441, 92d Cong., 2d Sess. in 3 U.S.Code Cong. & Admin.News, pp. 4698, 4702 (1972).

Accordingly, Congress eliminated the remedies for recovery available under the decisions in *Sieracki* and *Ryan.* The amended Act permits the injured longshoreman to receive compensation and also to maintain an action against the third party responsible for his injuries. He is allowed six months to commence suit. In the event he fails to commence the action within the appointed time and benefits have been paid him, the employer, or its carrier, may maintain the action in its own behalf, as well as that of the injured employee. 33 U.S.C. §§ 933(b) & (h). If the subrogated action is successful the amount of the total recovery is allocated according to the statutory formula stated in § 933(e).[1] Thus, Congress has expressly provided that in a suit at the instance of the employer, or its carrier, the

---

1. 33 U.S.C. § 933(e) reads:

   Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:
   (1) The employer shall retain an amount equal to—
   (A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or Board);
   (B) the cost of all benefits actually furnished by him to the employee under section 907 of this title;
   (C) all amounts paid as compensation;
   (D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative; and
   (2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer.

stevedore is entitled to full reimbursement of the compensation benefits paid to its employee, and its costs, including attorney's fees. The remainder of the excess, less one-fifth—"which shall belong to the employer"—shall be paid by the employer to the person entitled to compensation. 33 U.S.C. §§ 933(e)(1) & (2).

While the Act provides with particularity for the distribution of the fund recovered by way of judgment or settlement of the action pursued by the employer or its carrier, the Congress made no provision for the allocation of the funds recovered by the injured employee. Judge Tenney recognized that the statutory silence again burdened the court with making the allocation according to the statutory scheme as in *Valentino v. Rickners Rhederei, G.M.B.H., supra,* 552 F.2d at 468. The appellant contends that the rule formulated in *Valentino* controls the disposition of this appeal.

The applicable law reviewed in Judge Meskill's opinion in *Valentino* was written on a different slate. It was in the context of a litigated recovery by the longshoreman that was inadequate to satisfy the lien of the employer for compensation and medical expense previously paid. Because the $5,000 recovered by the longshoreman was insufficient to cover the lien of $15,488.13 for compensation and medical expenses, the employer claimed the entire recovery. *Id.* at 469. The court rejected the claim. This was done without disturbing the holding in *Fontana v. Pennsylvania R. R.,* 106 F.Supp. 461 (S.D.N.Y.), *aff'd sub nom. Fontana v. Grace Line, Inc.,* 205 F.2d 151 (2d Cir.), *cert. denied,* 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed.

390 (1953). *Valentino, supra,* 552 F.2d at 470.

In *Fontana* the employee's settlement of his claim produced a fund that exceeded the cost of the litigation. The employee contended, as here, that the employer ought equitably to bear a proportion of his attorney's fees. Judge Weinfeld's opinion points out the statutory scheme opposed the contention.

> Thus, the Act treats the recovery as a fund charged first with the expense of the litigation and then with the amounts paid for compensation and medical expenses and the employee becomes entitled only to any excess finally remaining. There is no reason why a recovery obtained against the third party by the employee rather than the employer should be distributed differently. The expense of securing the recover is, as in equity it should be, a first charge against the fund itself. As such it is immaterial whether the fund was created in a suit brought by the employer or one brought by the employee.

106 F.Supp. at 463–464.

We are mindful of the prevailing conflict between the circuit courts of appeals on this very question. *E. g., Cella v. Partenreederei MS Ravenna,* 529 F.2d 15 (1st Cir. 1975) *cert. denied,* 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976); *Swift v. Bolten,* 517 F.2d 368 (4th Cir. 1975); *Chouest v. A & P Boat Rentals, Inc.,* 472 F.2d 1026 (5th Cir.) *cert. denied* 412 U.S. 949, 92 S.Ct. 3012, 37 L.Ed.2d 1002 (1973).[2] In the divergence of decisions we find Judge Coffin's explication in *Cella* of the statutory scheme more persuasive.

---

2. In *Chouest* a prime factor in the allocation of attorney's fees was the conflict of interest aspect of the limited recovery in that instance. The court's opinion by Judge Wisdom stresses the point.

> It offends both our prior decisions and the spirit of fairness which they embody to suppose that Travelers could hammer away at the plaintiff's case without paying a reasonable fee for the services of the plaintiff's lawyer which resulted in Traveler's financial benefit. We hold that an employer-intervenor who benefits from the plaintiff's recovery against a shipowner must compensate the

plaintiff's lawyer for his efforts when, as here, the employer-intervenor's counsel, by virtue of his client's third party defense, adopts a position at the trial which is totally adverse to the plaintiff's cause.

472 F.2d at 1031.

> Reallocation need be undertaken only in very limited circumstances. . . . In the present case we hold that reallocation is likewise mandated where the intervenor's attorney contributes nothing of material assistance to the plaintiff's case, and instead devotes his efforts to undermining it.

472 F.2d at 1037.

To be sure, the formula for distribution of the fund recovered through the efforts of the stevedore contained in 33 U.S.C. § 933(e) does not specify the allocation of the recovery obtained by the injured employee, yet it unfolds the sense of the statutory purpose of the 1972 amendments—"to strictly limit the liability of the stevedore in order to husband its resources, and its insurance carrier's resources, for payment of the increased benefits under the Act." *Cella, supra,* 529 F.2d at 20.

The distribution of the fund ordered by the district court resulted in no windfall to the intervenor. It merely satisfies the statutory lien in keeping with the legislative purpose. It is consistent with the prior decision of this court in *Fontana, supra;* it is not at variance with the teaching in *Valentino, supra.* The order is affirmed.