ASHCRAFT AND GEREL, Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Appellee.

No. 18591.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 22, 1965.

Decided Feb. 18, 1965.

Mr. Joseph H. Koonz, Jr., Washington, D. C., with whom Messrs. Martin E. Gerel, Lee C. Ashcraft and William E. O'Neill, Jr., Washington, D. C., were on the brief, for appellant.

Mr. James A. Belson, Washington, D. C., with whom Mr. Paul R. Connolly, Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, and BURGER and McGowan, Circuit Judges.

McGOWAN, Circuit Judge.

Appellant, a law partnership, sued to collect a legal fee assertedly owing from appellee, a workmen's compensation insurance carrier for a local employer. The fee was said to have been earned by reason of appellant's professional exertions in pressing the injured employee's [1] claim for negligence against a third party, resulting in a settlement large enough both to cover appellee's total payments to the employee under the workmen's compensation law and to provide, after the deduction of legal fees, a substantial excess for the employee over those payments. The District Court granted summary judgment for appellee, having concluded that, in the light of undisputed facts of record, appellant was not in law entitled to claim a fee under the circumstances of this case. We agree that the case in this aspect presented no factual issues; [2] and we are in accord with the legal conclusion reached by the District Court.

## I

The employee, who worked for a steel company, was injured in an accident involving a railroad. He was paid by appellee a total of $15,276.30 in discharge of his employer's liability under the Workmen's Compensation Act. As presently permitted under that statute, the employee, represented by appellant, elected to exercise his prior right, within the six months provided for this purpose in the statute, to pursue a claim in tort against the railroad. That suit eventuated in a settlement of the claim for $100,000. This sum was disposed of as follows: Appellee's subrogated interest of approximately $15,000 was paid to it; and the remaining $85,000, minus legal fees of approximately $28,000 (in accordance with a one-third contingency arrangement between appellant and the employee), was paid to the latter. At the same time, however, that appellant sent appellee the check for roughly $15,000, it informed appellee that it believed appellee should pay to it a legal fee of approximately $5,000. Upon appellee's refusal to do so, it brought this suit.

## II

Appellant does not claim that its right to this fee resides in any understanding of a contractual nature between it and appellee, or that its right derives from any justifiable reliance to its detriment upon conduct of appellee inducing a reasonable expectation that a fee would be paid if the employee's claim against the railroad were successfully pursued. Rather, appellant's position essentially is

1. There were in fact two employees who sustained injuries and were paid compensation by appellee, but the issue on this appeal is the same as if there were one. For convenience in the references hereinafter made to certain figures, the two employees will be treated in this opinion as one.

2. The motion for summary judgment advanced two other reasons why appellant should not recover, i. e., an alleged express contractual undertaking by appellant not to charge a fee, and estoppel. While it may be that one or both of these grounds involved disputes of fact appropriate for resolution at trial, it is clear that the District Court did not take either into account in granting the motion. We are therefore unable to accept appellant's argument to us on this appeal that there was a dispute between the parties as to the facts on which the District Court predicated its legal conclusion.

that, since the statute permits the employer to reimburse itself first for legal expenses out of any recovery realized when it presses the claim against a third party for causing the injury, Congress must be taken to have intended the employee to have the same privilege whenever it is the employee who sues the third party. This conclusion does not, in our view, inexorably attend upon the premise, at least in the circumstances reflected in this record.

■ In so deciding we are not acting without the benefit of the opinions of sister courts of appeals confronted with this problem. Congress has chosen to provide workmen's compensation in the District of Columbia by the simple device of making the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1440 (1927), as amended, 33 U.S.C. § 933 (Supp. V, 1963), applicable to employment in the District. 36 D.C.Code § 501. Other federal courts, therefore, have on occasion addressed themselves to the same statute with which we are concerned here. Claims for legal fees substantially identical with that before us have been rejected by the Second and Third Circuits.[3] In *Fontana*, District Judge Weinfeld was confronted with a claim that, where the employer had made compensation payments of approximately $1,700 and the employee had recovered $4,000 from an allegedly negligent third party, reimbursement of the employer should be accompanied by an appropriate reduction in respect of legal fees and other litigation costs. Judge Weinfeld held otherwise, and his opinion was adopted by the Court of Appeals. On similar facts (compensation payments, $1,012.50; employee's recovery from third party, $7,500), the Third Circuit in *Davis* rejected a like claim. We uphold the District Court's action in reaching the same result in the case before us.

Appellant's effort to persuade us to the contrary has two aspects. It is first argued that the Fifth Circuit has, in two cases, held the other way, and that we should follow this line of authority. The first of such cases is Voris v. Gulf-Tide Stevedores, 211 F.2d 549 (5th Cir.), cert. denied, 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649 (1954). There the employer's compensation liability was to make continuing payments to the children of the deceased employee until they became eighteen. The employer had paid a total of $1,742.58 when the children recovered $13,500 in a suit brought on their behalf against a third party. The trial court directed that this sum be disposed of as follows: $1742.58 to the employer, $3,900 as a legal fee to the children's attorney, and the balance of $7,857.42 to the children. Although the last-named sum was to be treated as a credit against the employer's continuing obligation to make payments to the children, it appeared to be true that its obligation would exceed this credit. The Court of Appeals refused to disturb this disposition upon appeal. The Third Circuit, in deciding *Davis*, expressly took note of this decision in the Fifth Circuit, and distinguished it on the ground that, unlike the facts before it, *Voris* presented a situation where the recovery was not adequate both to cover litigation costs and to make the employer whole.

The second case in the Fifth Circuit is Strachan Shipping Co. v. Melvin, 327 F.2d 83 (1964). In this case the employer's compensation liability was approximately $28,000. The employee, under a 40 per cent contingency fee agreement with a lawyer, sued a third party and recovered $30,000. The circuit court affirmed a judgment that first deducted the $12,000 contingent fee and $558.88 in litigation expenses before remitting the balance of approximately $17,500 to .

3. Fontana v. Grace Line, Inc., 205 F.2d 151 (2d Cir.), *cert. denied* Fontana v. Huron Stevedoring Corp., 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953), *affirming* Fontana v. Pennsylvania R. Co., 106 F.Supp. 461 (S.D.N.Y.1952); Davis v. United States Lines Co., 253 F.2d 262 (3d Cir. 1958). See also Oleszczuk v. Colmar S.S. Corp., 163 F.Supp. 370 (D.Md. 1958), and Petition of Sheffield Tankers Corp., 222 F.Supp. 441 (N.D.Cal.1963).

# 336

the employer. The court was sharply divided. The majority's principal reliance was on its earlier opinion in *Voris,* with no reference whatsover to *Fontana* or *Davis.*

We regard these two Fifth Circuit decisions as involving significantly different circumstances from those presented by this appeal. Of each it could be said, in broadly characterizing the practical effects of the employee's pursuit of his claim against a third party, that the employee ended up no—and the employer, somewhat—better off than if no such effort had been made. What all this should mean in terms of divining a Congressional purpose with respect to the treatment of legal fees in a context of this kind is a speculation we can forego upon this record. We remain unpersuaded that *Fontana* and *Davis* should be rejected as insupportable resolutions of the issue presented by the facts before us.

Appellant's argument that we should be so persuaded is premised upon the fact that the statute was amended in 1959, and that both *Fontana* and *Davis* were decided before that time. But we are unable to relate those amendments to any erosion of the bases of those decisions. Prior to such amendments, an injured employee was required to elect between receiving compensation under the statute or suing a third party; and his acceptance of compensation operated without more to effect an assignment of the negligence claim to the employer, who was free to pursue it if he chose. If he did so with success, the statute provided that the resulting fund, minus litigation expenses, should be devoted first to full reimbursement of the employer for his compensation liability, with any excess to go to the employee, but only, in this latter case, after a 20 per cent deduction retainable by the employer.

The central purpose of the 1959 amendments was to eliminate the necessity for election. This was done; and, in the process, it was also provided that, although acceptance of compensation operated as an assignment, such assign-

ment did not become effective for six months, during which time the employee was free to press his claim against the third party. In thus rewriting the statute, Congress left unchanged its earlier specification of the priorities to be observed in distributing a recovery realized by an employer against a third party. It did not expand these provisions to provide a comparable specification in the case of a recovery achieved at the instance of the employee. Appellant urges that this latter omission is to be taken as signifying a purpose to extend the old prescription to the new alternative. We find no such purpose.

■ What Congress did do in the 1959 amendments was simply to say that, if the employee sued, the employer's compensation liability would be restricted to any excess of that liability over the amount recorded. Enacted with *Fontana* and *Davis* on the books, this hardly strikes us as a legislative reversal of those decisions. It comports more, in our estimation, with the theme of those decisions to the effect that, certainly where the recovery is large enough to go round, full reimbursement of the employer—in the sense of his being made absolutely whole in respect of liability for compensation payments—is an important object of Congressional policy. This is not inconsistent with the continuation of the scheme whereby an employer who undertakes the suit is authorized to make himself similarly whole before turning over any excess to the employee. The additional 20 per cent Congress authorized to be retained out of this excess was presumably an inducement to employers to take an action, potentially beneficial to their injured employees, which, at the time, only the former could take. Now that the employees have been given a prior right to act, the continued existence of that provision is in itself a stimulus to their doing so.

Whether full reimbursement of the employer retains its primacy where the employee's suit has resulted in no enlargement of benefits to himself over and above the compensation to which he is

entitled under the statute, even though it has benefitted the employer to some degree by providing at least partial reimbursement, seems to us to raise questions clustering around control over the litigation inevitably inherent in the six months priority given the employee by the 1959 amendments. It may well be that Congress has not anticipated these problems or made the conscious provision for them that such anticipation might have entailed. But those problems are not before us in this case. We are unable to say that the circumstances we confront were not anticipated, or that the Congressional response was not the same as that embodied in the ruling of the District Court.

Affirmed.