William **BALLWANZ**, to the Use of Liberty Mutual Insurance Company,
Appellant,

v.

**JARKA CORPORATION OF BALTIMORE**, Appellee.

No. 10067.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 7, 1965.

Decided Aug. 31, 1967.

John J. O'Connor, Jr., Baltimore, Md. (O'Connor & Preston, Baltimore, Md., on brief), for appellant.

David R. Owen, Baltimore, Md. (Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

HAYNSWORTH, Chief Judge:

The question is the right of an attorney for an injured longshoreman to a fee at the expense of the stevedore under the Longshoremen's and Harbor Workers' Compensation Act [1] in the frequently encountered rotary situation in which the stevedore is also the ship's indemnitor. We think disallowance of the fee claim was properly entered.

Ballwanz, a longshoreman employed by Jarka Corporation, was injured while working aboard a vessel operated by Isthmian Lines, Inc. Liberty Mutual Insurance Company, which was Jarka's

---

1. 33 U.S.C.A. § 933.

general liability, as well as its compensation, carrier, paid Ballwanz $2,361.65 in compensation and medical benefits. Ballwanz then brought an action against the third party, Isthmian, claiming unseaworthiness, and Isthmian filed a third party complaint against Jarka, alleging a breach of its warranty of a workmanlike performance. After two abortive trials, Ballwanz, in the third trial, obtained a verdict against Isthmian in the amount of $5,100.00, and judgment over, in favor of Isthmian, was entered against Jarka for the amount of the judgment, including costs, plus Isthmian's attorneys' fees and costs. Including its own court costs of $59.92, this required a disbursement by Liberty Mutual, Jarka's representative, of $11,011.56, in addition to which it had to stand the cost of its own active legal representation in the proceedings.

By virtue of its compensation lien, Liberty Mutual recouped the $2,361.65 it previously had paid Ballwanz as compensation and medical expense, but the effect of that was no more than a transfer of the charge in that amount from its loss as compensation carrier to its loss as liability carrier. Had there been no insurance, Jarka would have been in the same position of having an offset against the adverse judgment of the amount it earlier had paid to Ballwanz. Beyond question, the result of the proceedings prosecuted by Ballwanz and his attorneys was the imposition of a net detriment upon Jarka and its insurer in the amount of $8,649.91,[2] plus the costs of Liberty's attorneys.

As a result of the judgment, Liberty Mutual has paid its own court costs and those of Ballwanz and Isthmian. It has provided its own legal representation and reimbursed Isthmian for its disbursements to its attorneys. In this application, it is asked to contribute as well to the fees of the plaintiff's attorneys.

In the circumstances, the application of the attorneys for Ballwanz for a fee to be paid by Jarka and Liberty Mutual in the amount equal to one-third of the earlier payments to Ballwanz is peculiarly inappropriate.

█ It is well settled, of course, that lawyers, who successfully create or preserve a fund in the custody of the court for the benefit of a class, are entitled to reasonable compensation out of the fund.[3] This is true though some members of the class, claimants to the fund, may have opposed its creation or preservation.[4] That principle does not extend to the recovery of legal fees from one, not a member of a mutually benefited class, who derives an incidental benefit from litigation.[5] Most assuredly, it does not extend to the imposition of legal fees upon an adverse party out of whose resources the alleged fund has been created.

The suggestion that Jarka and Liberty Mutual are the beneficiaries of a fund created by the efforts of the attorneys for Ballwanz has no shadow of realism in it. The lawyers' efforts have imposed additional liabilities upon them exceeding $8,000.00. A claim by the judgment debtor of credit for payments previously made to the judgment creditor is no part of any common fund for their mutual benefit and advantage.

Jarka and Liberty Mutual did not employ these claimants, who were engaged solely by Ballwanz. They lent them no encouragement; there was no acquiescence. They were in active opposition, for maintenance of the action by Ball-

---

2. The amount of the judgment plus Jarka's court costs, $11,011.56, less the credit for the $2,361.65 previously paid to Ballwanz.

3. Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Gibbs v. Blackwelder, 4 Cir., 346 F.2d 943; Buford v. Tobacco Growers Co-op. Ass'n, 4 Cir., 42 F.2d 791; Carbon Steel Co. v. Slayback, 4 Cir., 31 F.2d 702.

4. See Buford v. Tobacco Grower's Co-op. Ass'n, 4 Cir., 42 F.2d 791.

5. Haynes v. Rederi A/S Aladdin, 5 Cir., 362 F.2d 345; Preston v. United States, 9 Cir., 284 F.2d 514; Jett v. Merchants & Planters Bank, 4 Cir., 228 F.2d 156; Simmons v. Friday, 8 Cir., 190 F.2d 849; Richter v. United States, E.D.Pa., 190 F. Supp. 159, aff'd, 296 F.2d 509 (3d Cir. 1961).

wanz, through his lawyers, held no promise of benefit to them but certain expense and the risk of much greater loss.[6] Through their own lawyers, they actively participated in the proceedings.

In similar circumstances, the Fifth Circuit, despite its earlier holding in Strachan Shipping Co. v. Melvin,[7] held there was no basis for application of the equitable principle.[8] There was no creation of a common fund. No advantage was conferred. There was a clear rejection of representation by the plaintiff's attorneys when Liberty Mutual participated actively in the proceedings through its own attorneys in opposition to the plaintiff's claim. None of the essential concurrent pillars of the principle are present.

A contrary result is not required by the Longshoremen's and Harbor Workers' Compensation Act.

As amended in 1959, 33 U.S.C.A. § 933, permits an injured longshoreman to maintain an action in his own name after acceptance of compensation benefits. If he does not do so within six months, the cause of action is transferred to the stevedore employer. If the stevedore then brings an action and obtains a recovery, its distribution is specifically provided in § 933(e). The expenses of the litigation including reasonable attorneys' fees, are first paid. The stevedore next reimburses itself for the cost of medical benefits furnished and compensation paid to the longshoreman and for the present value of future payments. The remainder, if any, less twenty per cent as an additional bonus to the stevedore, is then payable to the longshoreman. The statute, however, does not specify the order of distribution if the action is prosecuted by the longshoreman.

One may contend that Congress, by its silence, intended the same order of distribution when the longshoreman brings the action as that so carefully spelled out by the statute when the employer is the controlling litigant. Such a construction would certainly make the provision for the twenty per cent bonus to the employer an anachronism. Indeed, the presence of that provision in the statute is strongly persuasive that § 933 was intended to apply only when the action is maintained by the employer. Nevertheless, Strachan Shipping Co. v. Melvin, 5 Cir., 327 F.2d 83, over Judge Brown's vigorous dissent, held that the fees of the longshoreman's lawyer should be measured by the gross recovery and paid first, though the employer had not approved or endorsed maintenance of the action. The position of the majority in Strachan Shipping, however, runs counter to the entire course of decision elsewhere,[9] and it can furnish little comfort to the plaintiff here in light of the subsequent decision of a different panel of the Fifth Circuit in Haynes v. Rederi A/S Aladdin, 5 Cir., 362 F.2d 345, involving a factual situation close to this one.

Obviously, the statute, when the employer brings the action, requires first payment of the expense of litigation and reasonable fees to the employer's lawyers, because those are the stevedore's liabilities, and neither his reimbursement nor his gain can be measured until they are settled. There is no similar reason for preferring liabilities of the longshoreman.

The quite evident purpose of the statute was to assure the injured longshoreman that he would receive not less than the medical benefits and compensa-

---

6. They had no other alternative. As Judge Brown observed, dissenting in Strachan Shipping Co. v. Melvin, 5 Cir., 327 F.2d 83, 90:

In this sometime weird Ryan-Yaka world, there is only one thing certain: no stevedore in his right mind wants, or encourages, a suit by an injured em-

ployee against a third party vessel or vessel owner.

7. 327 F.2d 83.

8. Haynes v. Rederi A/S Aladdin, 5 Cir., 362 F.2d 345.

9. See the cases cited in Haynes, supra note 8, 362 F.2d at 350 n. 11.

tion prescribed by the Act. Provision was made for a potential dividend or bonus to him through a third party action, but his interest clearly extends only to the excess over the employer's disbursements under the Act and his related litigation expenses. It is both reasonable and consistent with the statutory purpose to require that the longshoreman's lawyer have his compensation measured by and payable out of that interest when he proceeds without leave of the employer.

This is particularly true in the usual situation when the third party claim is against the ship and the ship is almost certain to have or assert a claim of indemnity against the stevedore. In those cases, the longshoreman's action is adverse and antagonistic to the stevedore. The stevedore must appear in opposition by its own counsel, and the longshoreman's lawyer has no interest in and is incapable of faithful representation of the employer's interest.[10] In that situation, counsel for the longshoreman ought not to have his fee measured by or payable out of any incidental credit received by the stevedore as a result of the litigation.[11]

Here, of course, even if we adopted the *Strachan Shipping* rule, the attorneys would gain nothing, for the recovery was more than sufficient to cover the litigation expenses, including a fee of one third of the recovery, and all compensation disbursements. Under *Strachan Shipping* the conclusion would be not that the stevedore should contribute to the lawyers' fee, but that their longshoreman client should pay more.

■ For these reasons, in the present circumstances, we conclude that the stevedore's credit for compensation disbursements is not chargeable with any contribution to the fees of the longshoreman's lawyers.

Affirmed.

10. See Judge Brown's careful analysis dissenting in *Strachan Shipping*, supra note 6.

11. The *Strachan Shipping* rule, of course, results in a greatly disproportionate ad-

vantage to the longshoreman's attorneys at the expense of their client, as Judge Brown's dissent pointedly demonstrates.