**Paul A. CELLA and Barbara Cella, Plaintiffs,**

v.

**PARTENREEDEREI MS RAVENNA, Defendant-Appellee.**

**Appeal of Michael B. LATTI.**

**No. 75–1210.**

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1975.

Decided Dec. 29, 1975.

Certiorari Denied May 19, 1976. See 96 S.Ct. 2175.

---

Michael B. Latti, Boston, Mass., with whom Robert B. Fredericks and Kaplan, Latti & Flannery, Boston, Mass., were on brief, for appellants.

John A. Donovan, Jr., Boston, Mass., with whom Thomas D. Burns and Burns & Levinson, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE, Circuit Judge, and THOMSEN *, Senior District Judge.

COFFIN, Chief Judge.

This appeal arises from a claim of attorney's fees against that part of a longshoreman's recovery against a third party shipowner which is subject to a steve-

* Of the District of Maryland, sitting by designation.

dore-employer's compensation lien. Appellant-attorney claims that his action in pursuing an injured longshoreman's third party complaint to settlement created a "common fund" which the longshoreman and the employer's compensation carrier shared. Equity, he says, demands that the compensation carrier be required to pay reasonable attorney's fees out of that portion of the recovery which it receives.[1] Relying on precedent, the district court denied the attorney's motion for fees, and ordered the entire amount to be paid to the insurance carrier without an allowance for fees. The issue on appeal is whether the district court applied the proper legal standards in refusing to grant the requested fees.

The injury to longshoreman Cella occurred on the MS RAVENNA on December 11, 1972, shortly after the effective date of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* Almost immediately thereafter, the compensation carrier of Cella's employer began paying medical benefits and compensation without reducing its liability to an award. 33 U.S.C. §§ 907, 914. The longshoreman instituted suit against the shipowner alleging that it had negligently caused his injury. The employer's insurance carrier did not formally intervene in the action, but notified both the longshoreman and the defendant shipowner that it was asserting a lien on the longshoreman's recovery in the amount of the compensation and benefits paid.[2] The case never went to trial, but was

settled for a total sum of $199,560.72. By the time of settlement, the carrier had paid $24,560.72 in compensation and medical benefits, and was liable for no more as the settlement was not consented to in writing. *See* 33 U.S.C. § 933(g). The issue in this case is the proper distribution of the settlement. After subtracting the total amount due the insurance carrier, the plaintiff's attorney retained one-third of the net settlement of $175,000 as a fee from the longshoreman, and turned the rest over to his client. Wishing to assert a right to fees from the insurance carrier, the attorney forwarded $14,560.72 to the carrier, and deposited the balance, $10,000, in the registry of the district court.

The issue of whether attorney's fees can be subtracted from the portion of a longshoreman's recovery against a third party tortfeasor which reimburses the employer's insurance carrier has a long history of litigation. With the exception of those cases where the recovery against the third party does not adequately compensate the longshoreman and his attorney, *Chouest v. A & P Boat Rentals, Inc.*, 472 F.2d 1026 (5th Cir.), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973); *Strachan Shipping Co. v. Melvin*, 327 F.2d 83 (5th Cir. 1964), the employer or its carrier has not been required to bear a portion of the burden of attorney's fees or litigation expenses. *Lamar v. Admiral Shipping Corp.*, 476 F.2d 300, 303 (5th Cir. 1973); *Haynes v. Rederi A/S Aladdin*, 362 F.2d 345, 351 (5th Cir. 1966); *Davis v. United*

---

1. We understand the issue to be whether the reimbursement of the insurance carrier is to be reduced by a reasonable charge for attorney's fees. We do not understand the attorney to claim that his contingency fee should be calculated on the entire settlement amount, and the additional fee be paid from the sum that would otherwise go to the injured longshoreman. The latter allocation of the recovery—sums go first to attorney's fees, then full reimbursement of the employer and finally, the remainder to the injured employee—is that provided for employer suits under 33 U.S.C. § 933(e). *See Fontana v. Pennsylvania R. R.*, 106 F.Supp. 461 (S.D.N.Y.1952), *aff'd mem. on opinion below sub. nom., Fontana v. Grace*

*Line, Inc.*, 205 F.2d 151 (2d Cir.), *cert. denied*, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953).
2. The insurance carrier specifically informed the plaintiff's attorney that it was not engaging him to represent the company for the recovery of the compensation payments. Another firm did monitor the proceedings for the insurance carrier, but did not actively participate in the litigation. That there was no contractual relationship between the plaintiff's attorney and the insurance carrier does not affect the attorney's rights under the "common fund" theory of awarding fees. *See* Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds*, 87 Harv.L.Rev. 1597, 1607–09 (1974).

*States Lines Co.*, 253 F.2d 262 (3d Cir. 1958); *Fontana v. Pennsylvania R. R.*, 106 F.Supp. 461, 463–64 (S.D.N.Y.1952), *aff'd mem. on opinion below sub. nom., Fontana v. Grace Line, Inc.*, 205 F.2d 151 (2d Cir.), *cert. denied*, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953).

Appellant acknowledges this weight of precedent, but contends that these cases merely reflect the lack of equity in awarding attorney's fees from the stevedore employer prior to the 1972 amendments to the Act. He claims that the common fund theory has always been applicable to fees in the context of longshoremen's suits, and that the relevant equities have been changed so substantially by the 1972 amendments that an award of fees is now appropriate. Appellee contends that the refusal to assess fees, although not mandated by the Act, *see* 33 U.S.C. § 933, was to conform the distribution of the recovery to that provided for in the Act, *see* 33 U.S.C. § 933(e), and furthers the purposes of the Act.

The Act, as amended, permits an injured longshoreman both to receive com-pensation under the Act and sue a third party for the injuries he has received.[3] 33 U.S.C. § 933(a). The Act itself makes no provision for reimbursement of the employer or its insurance carrier, and does not set out a particular formula for distribution of any recovery against the third party tortfeasor. If, however, compensation is paid to the injured workman subject to an award, and the longshoreman does not sue the third party within six months of the date of the award, the right of action against the third party is assigned to the employer or his insurance carrier, who then is empowered to file suit. 33 U.S.C. §§ 933(b) & (h). If the employer or carrier recovers damages in a suit filed pursuant to § 933(b), the recovery must be allocated according to the formula contained in § 933(e). Under this scheme the employer retains not only the amount of all compensation previously paid and the present value of all amounts payable in the future under the award, but a reasonable attorney's fee and one fifth of any amount recovered in the suit in excess of the payments made, the present value of future payments, and its costs and attorney's fees.[4]

---

**3.** Under the original, 1927 legislation, an injured longshoreman was required to elect between receiving compensation and suing a third party. If the longshoreman received compensation, his right of action against the third party was assigned to his employer. Act of March 4, 1927, ch. 509, § 33, 44 Stat. 1440. In 1938, the section was amended to allow the injured longshoreman both to receive compensation and file suit. If compensation was paid pursuant to an award by the Deputy Commissioner, however, the longshoreman's cause of action was assigned to his employer. Act of June 25, 1938, ch. 685, §§ 12, 13, 52 Stat. 1168. A subsequent amendment, in 1959, delays the assignment of the right of action to six months from the date of the award. Until that time the employee is free to sue. Act of August 18, 1959, P.L. 86–171, 73 Stat. 391. As the Act directs employers to compensate injured longshoremen without an award, 33 U.S.C. § 914(a), unless the employer's liability is controverted, most suits are brought by the longshoreman, entirely independent of the 1959 amendment to 33 U.S.C. § 933(b). The 1972 amendments do not substantially change the provisions of this section.

**4.** 33 U.S.C. § 933(e) reads:
"Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:
(1) The employer shall retain an amount equal to—
(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or Board);
(B) the cost of all benefits actually furnished by him to the employee under section 7 [§ 907 of this title];
(C) all amounts paid as compensation;
(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 7 [§ 907 of this title], to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits

Shortly after the amendment to the Act which allowed the injured longshoreman to sue a third party as well as receive compensation payments, the courts found that the employer had an equitable right to reimbursement for compensation paid upon the worker's recovery from the third party. *The Etna*, 138 F.2d 37 (3d Cir. 1943). Formal intervention in the third party action is not necessary to protect this right. *E. g., Russo v. Flota Mercante Grancolombiana*, 303 F.Supp. 1404, 1406 (S.D.N.Y.1969).

When allocating the recovery obtained in an employee-plaintiff suit, some courts found that attorney's fees should not be charged so as to reduce the reimbursement amount returned to the employer. Because they were not so charged when the employer sued under § 933(b), these courts reasoned that it should make no difference who brought the suit in distributing the recovered sums, *Davis v. United States Lines Co., supra; Fontana v. Pennsylvania R. R., supra* at 464; *see Ashcraft & Gerel v. Liberty Mutual Ins. Co.*, 120 U.S.App. D.C. 51, 343 F.2d 333 (1965). More fundamentally, the courts found that the liability of the employer should be strictly limited to providing a guaranteed level of compensation. Once the employee is assured of receiving from a third party an amount not less than the minimum amount of the compensation set by the Act the employer's liability was considered to be terminated.[5] Full reimbursement of the employer, without any reduction for litigation expenses, was "an important object of Congressional policy." *Ashcraft & Gerel, supra* at 336;

*Accord, Davis v. United States Lines Co.*, 153 F.Supp. 912, 915–17 (E.D.Pa.1957), *aff'd*, 253 F.2d 262 (3d Cir. 1958).

The fourth circuit, however, has adopted a different analytical approach which, after the 1972 amendments, led it to an opposite result. Prior to the amendments it had held that the § 933(e) distribution scheme did not control the allocation of an employee-plaintiff suit recovery. Rather, it ruled that proration of attorney's fees would be inappropriate under established principles of equity. *Ballwanz v. Jarka Corp.*, 382 F.2d 433 (4th Cir. 1967.[6] At the time of *Ballwanz*, a third party suit by a longshoreman often resulted in the imposition of liability upon a stevedore employer in an amount greater than the recovery of the injured longshoreman. A longshoreman could recover against a shipowner for breach of the warranty of seaworthiness. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The shipowner, in turn, could hold the stevedore-employer liable for the damages and the costs of defense resulting from the longshoreman's suit on the theory of breach of the stevedore's warranty of workmanlike performance, or through a contractual indemnity clause. *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The longshoreman's successful suit did not create a benefit for the employer; rather, it subjected the employer to a greater liability than that it owed for compensation under the Act.

In a recent case, *Swift v. Bolten*, 517 F.2d 368 (4th Cir. 1975), the fourth cir-

as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative; and

(2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer."

**5.** By settling the suit against the shipowners, plaintiff terminated his employer's future liability under the Act without a formal determination that the recovery from the third party equalled or exceeded his rights under compensation. There is no contention that the settle-

ment was, in fact, inadequate. We do not address the problems associated with an inadequate recovery.

**6.** The *Ballwanz* court's primary and first thrust was upon its finding that the principles of equity did not sustain an award of fees. It found, "[n]one of the essential concurrent pillars of the principle are present." 382 F.2d at 436. It went on to state that the Act did not compel the award of attorney's fees. *Id.* A fair reading of *Ballwanz*, despite its discussion of the statutory factors, is that it was decided on the principles of equity. *Swift v. Bolten*, 517 F.2d 368, 370 (4th Cir. 1975).

cuit found that the 1972 amendments, by overriding these judicial doctrines, altered the equities between the longshoreman and his employer so substantially, that the stevedore should be taxed an appropriate attorney's fee. *Id.* at 370. Under the amendments, the longshoreman must prove negligence to recover from the shipowner, thus making a third party action more difficult to win. More importantly, the shipowner is unable to pass on its liability to the stevedore. 33 U.S.C. § 905(b). Under recent decisions, the stevedore receives full reimbursement of its compensation payments even if it was currently negligent in causing the longshoreman's injuries, *Dodge v. Mitsui Shintaku Ginko K. K. Tokyo,* 528 F.2d 669 (9th Cir. 1975), and cannot otherwise be compelled to contribute to the longshoreman's recovery. *Shellman v. United States Lines, Inc.,* 528 F.2d 675 (9th Cir. 1975); *Landon v. Lief Hoegh & Co.,* 521 F.2d 756 (2d Cir. 1975). The stevedore-employer is no longer in the position of an adversary to an injured longshoreman in a third party suit. The employer benefits from a successful suit but risks no further liability because of it.

■ Were we to follow the fourth circuit and hold that the normal dictates of equity control the allocation of attorney's fees in this case, we might be more disposed to find that it would be appropriate to award fees out of that portion of the settlement that goes to reimburse Cella's employer.[7] But this case arises in the context of the Longshoremen's and Harbor Workers' Compensation Act.

While the statutory provisions do not govern the distribution of the recovery of an employee suit, we think that the allocation of attorney's fees in such a suit must conform to the purposes and policies of the Act.

■ The 1972 amendments described above were enacted as a compromise between shipowners and stevedore-employers in order to provide increased statutory compensation payments. For years the scale of compensation payments had been insufficient. Elimination of the unseaworthiness cause of action against the shipowner, and the indemnity action against the stevedore was necessary to ensure adequate funds for the increased benefits. In particular, the drain on the employer's resources by the attorney's fees and expenses required to litigate the third party indemnity actions was cited as an obstacle to funding adequate compensation payments. H.Rep. No. 92–1441, 92d Cong., 2d Sess. in 3 U.S.Code Cong. & Admin.News, pp. 4698, 4702 (1972). S.Rep. No. 92–1125, 92d Cong., 2d Sess. 9 (1972). We conclude that the overriding purpose of the 1972 amendments was to strictly limit the liability of the stevedore in order to husband its resources, and its insurance carrier's resources, for payment of the increased benefits under the Act.

■ An award of attorney's fees out of that portion of a third party tort settlement which goes to reimburse the employer or its carrier would contravene this fundamental purpose. It would cause a reduction in the amounts which the employer can legitimately call upon

---

7. Appellee claims that the common fund theory is technically inapplicable. Attorney's fees are charged under that theory, only if the stranger benefitting from the fund would have otherwise been able to sue and would have accrued expenses in doing so. The employer could have intervened in the longshoreman's suit and actively joined with its employee in pursuing the present action. An independent suit to recover compensation paid, *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), may no longer be available. 33

U.S.C. § 905(b) states, in part, "The remedy provided in this subsection [suit on the theory of negligence] shall be exclusive of all other remedies against the vessel except remedies available under this Act."

If, however, the stevedore had reduced its liability to the longshoreman to an award, and then sued under § 933(b), it would not have been liable for attorney's fees if an adequate recovery was made. Because of the disposition we make of the main issue, we do not reach this technical point.

to fund its obligation towards injured workmen under the Act. As Congress was aware of the then unanimous judicial rule that the reimbursement portion of a longshoreman's recovery ordinarily is not reduced by attorney's fees, *see* S.Rep. No. 428, 86th Cong., 1st Sess. in 2 U.S.Code Cong. & Admin.News, pp. 2134, 2135 (1959), a change in this rule which would conflict with the purposes of its enactments should come from that body.[8] We conclude, in accordance with the intent of Congress, that reimbursement funds undiminished by attorney's fees should be available to fund the compensation of workmen whose injuries cannot be charged to the tortious conduct of third parties.

Finally, we are not convinced that the longshoreman and his attorney are unfairly treated by this system of distribution. True, the attorney is forced to forego part of his fee which he would receive in an ordinary suit. His client, however, is in an advantageous position in comparison with ordinary tort plaintiffs. Because the longshoreman is guaranteed an absolute minimum in compensation and medical benefits, the attorney should be in a tactically superior position to negotiate a favorable settlement. Since the attorney's fee for this type of litigation is a percentage of the recovery, a larger settlement will result in a larger fee.

*The decision of the District Court is affirmed.*

---

8. Congress has specifically provided for payment of employee's attorney's fees in administrative proceedings under the Act. If the employer contests the fact of, or the extent of, liability and the longshoreman ultimately prevails, the employer must pay the employee's attorney reasonable fees. 33 U.S.C. § 928(a) & (b).