Price MITCHELL, Jr.,
Plaintiff-Appellant,

v.

SCHEEPVAART MAATSCHAPPIJ
TRANS–OCEAN et al.,
Defendants,

Employers National Insurance Company,
Intervenor-Appellee.

No. 76–3611.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1978.

Ross Diamond, III, Mobile, Ala., for plaintiff-appellant.

W. Boyd Reeves, Mobile, Ala., for intervenor-appellee.

Before WISDOM, THORNBERRY and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Counsel filed and successfully settled an injured longshoreman's third-party negligence claim against the owner of the ship on which the longshoreman was injured, 33 U.S.C. §§ 905(b), 933(a); this resulted in complete recovery of the compensation previously paid by the employer to the plaintiff under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901, *et seq.* The plaintiff, on behalf of the real party in interest, his lawyer, now seeks to have a contingency fee for the attorney's services taxed in part against the compensation carrier for the longshoreman's employer, the stevedore. Because the total settlement in this case is sufficient to permit the attorney's one-third contingent fee to be subtracted entirely from the longshoreman's net recovery, even if computed on the basis of the gross amount recovered, the district court held that the compensation insurer could not be taxed with any litigation expenses or fees for plaintiff's counsel.

We discuss first the issue whether counsel is entitled to any contribution by the carrier. Because our own prior case law does not establish definitely a rule for this circuit, and other circuits have reached different conclusions on this question, we consider in detail our own decisions and measure them against the terms and policies of the LHWCA as amended in 1972. Having done so, we conclude that, under principles previously adopted in this circuit, counsel is entitled to recover some portion of his fee from the employer's insurer who benefitted from the lawyer's services by recovering the full amount it had paid the plaintiff. Finally, we consider how counsel's requital should be calculated.

## I.

The plaintiff was injured while working as a longshoreman unloading cargo from a vessel. His employer's insurer paid him compensation totalling $4,018.35. He retained counsel, on a one-third contingent fee, to sue the vessel for negligence. Counsel settled the plaintiff's claim for $10,000.00. The compensation carrier, who intervened after the settlement was negotiated, was paid in full. Plaintiff's counsel, however, charged his client only one-third of the longshoreman's net recovery. He sought, on the basis of equitable principles, also to be paid one-third of the carrier's recovery, asserting that, through his efforts, the carrier was made whole. The district court refused to charge any fee to the compensation carrier, finding, among other things, that the carrier's own counsel provided some assistance in effecting a settlement.

Whether the plaintiff-longshoreman's lawyer is, in such cases, entitled to be paid some fee for effecting return of any compensation paid does not turn on whether he has a contingent fee contract with the injured worker, or, if he does, the amount of the percentage fixed by their agreement. The relevant question is whether the lawyer is due some recompense from the carrier under any conditions, and, if the answer is that a fee is sometimes due, what circumstances determine when the employer or his insurer must pay something in return for what the lawyer has recouped.

Three cases govern this issue in this circuit: *Strachan Shipping Co. v. Melvin*, 5 Cir. 1964, 327 F.2d 83; *Haynes v. Rederi A/S Aladdin*, 5 Cir. 1966, 362 F.2d 345, *cert. denied*, 1967, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557; and, *Chouest v. A & P Boat Rentals, Inc.*, 5 Cir. 1973, 472 F.2d 1026, *cert. denied*, 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002. In each case, counsel, having won a verdict for his longshoreman-client against a shipowner, sought to have the compensation carrier for the plaintiff's employer share in the costs of litigation and an attorney's fee.

In the *Melvin* case, the longshoreman's counsel won a jury verdict of $30,000.00 for his client. The employer's compensation carrier had paid the plaintiff $27,836.92. The court below found that a reasonable attorney's fee for the plaintiff's gross recovery was 40 per cent of the total. Thus, the fund created by the jury verdict was insufficient to pay both the court-sanctioned attorney's fee and full reimbursement to the carrier. The lower court ordered the attorney paid first, a result we affirmed, stating "one who accomplishes the creation of a fund for the benefit of another is entitled to reimbursement there-

from for the reasonable costs thereby incurred," 327 F.2d at 85–86, *quoting Voris v. Gulf-Tide Stevedores*, 5 Cir. 1954, 211 F.2d 549, 551, *cert. denied*, 1954, 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649. We concluded that the lower court, having reasonably determined that 40 per cent of the gross was a proper fee, had not abused its discretion in charging that fee chiefly to the party who benefitted almost exclusively from counsel's efforts, namely, the compensation carrier.

In *Haynes*, plaintiff's counsel won a court verdict of $8,150.00. The compensation payments amounted to $6,892.25. The *Haynes* panel found that the compensation carrier "employed its own attorneys to preserve its position during this litigation and these counsel represented it and actively asserted its rights throughout the trial." 362 F.2d at 351. Thus, the carrier's counsel "were responsible, at least in large part, for the reimbursement allowed it." *Id.* Because the plaintiff's counsel's work had not enriched the carrier, the carrier could not equitably be required to contribute to the attorney's fee. The court, therefore, neither determined the reasonableness of the attorney's fee requested nor reached the issue of the scope of the plaintiff's entitlement to a contribution by the carrier, but rather denied the right to any recompense.

The third leg on which rests the scope through which we must examine this case [1] is *Chouest*.[2] In *Chouest*, plaintiff won a verdict of $4,959.00. His employer's carrier had paid out $4,610.61 in compensation. Because of a conflict of interest between the employer and the longshoreman that existed under the LHWCA prior to 1972,[3] the carrier's counsel actively opposed the employee's suit at trial. We viewed the circumstances of *Chouest* as presenting an *a*

---

1. The metaphor is borrowed from Thornton Wilder, Theophilus North 39 (Avon ed. 1973).

2. We note what is of record: Judge Wisdom was the author of *Chouest*; Judge Rubin was the trial judge in that case.

3. Prior to the 1972 amendments of the LHWCA, Act of Oct. 27, 1972, P.L. 92-576, *Ryan Stevedoring Co. v. Pan-Atlantic Corp.*, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133,

granted a shipowner against whom a longshoreman had recovered a third-party judgment a right of indemnity against the employer-stevedore based on a "warranty of workmanlike performance." Recoveries by covered workers and their employers predicated on such warranties and on the rule of unseaworthiness were eliminated by the amendments. 33 U.S.C. § 905(b).

*fortiori* version of the *Melvin* case: the carrier was reimbursed its compensation payments not only as a consequence of the efforts of the plaintiff's counsel, but in spite of the adverse efforts of its own counsel at trial. Equity again required some proration of the plaintiff's attorney's fee.[4]

■ These three cases—*Melvin, Haynes,* and *Chouest*—all share the underlying premise that, where the reimbursement of the employer's compensation carrier is achieved through the efforts of the plaintiff's counsel, a reasonable fee for plaintiff's counsel may, if necessary, be levied for recovery of the compensation. That principle would seem to flow inexorably from these cases although it is not stated clearly in the opinions. This lack of clarity with respect to the ratio decidendi in our own opinions, together with a coincidence in the facts of *Melvin* and *Chouest* has suggested—to the lower court here, among others—an alternative view that seems also to reconcile the cases. In *Melvin* and *Chouest,* the gross recovery was insufficient to permit full reimbursement of the compensation paid and the full payment, from the plaintiff's net recovery, of a reasonable attorney's fee. Thus, these cases might be viewed as holding that an attorney's fee may be taxed for recovery of the compensation lien only when no other fund for the payment of a reasonable fee is available.[5]

■ This apparently nice discrimination, however, ignores the equitable basis for the holdings of *Melvin, Haynes,* and *Chouest.* Before allowing any fee to be taxed for recovery of compensation, the court was required to determine that some principle warranted requiring the employer (or his

insurer) to bear the burden. As we have pointed out, in all three cases we endorsed application of the equitable rule that he who reaps a harvest for another is entitled to share in the yield. Only if that predicate is accepted would any court reach the question whether the gatherer has already been adequately rewarded. If it is equitable to require plaintiff's counsel to be compensated by the employer when it is impossible for counsel to collect a reasonable attorney's fee from the plaintiff's net recovery, it is also equitable to do so when it is possible to collect a fee from the plaintiff alone, but any reasonable fee for the gross recovery, if deducted from the plaintiff's net recovery, would impose a disproportionately large burden on the plaintiff. The equitable charge on the employer or his insurer is not based on whether the injured worker himself has recovered but on the recoupment the employer or his insurer has achieved as a result of the efforts of plaintiff's counsel. Once the validity of that appeal to the chancellor's conscience is demonstrated, we turn to the other side of the fairness formula: whether the benefit to the plaintiff and, indirectly, to his counsel, is so large that each has already been amply reimbursed for efforts made, so that they would, in turn, be reaping an unearned bounty if more were allowed. Measured in that balance, this is a case that requires the beneficiary of the longshoreman's efforts to contribute.[6]

*Chouest* is alive and well. But a straitened interpretation of it is not correct. The Second Circuit recently decided a case in which it adopted, at least in *dictum,* such an interpretation. In *Valentino v. Rickners*

**4.** The antagonistic position of the plaintiff and his employer led other courts to deny proration on precisely that ground, e. g., *Ballwanz v. Jarka Corp. of Baltimore,* 4 Cir. 1967, 382 F.2d 433, *overruled in Swift v. Bolten,* 4 Cir. 1975, 517 F.2d 368.

**5.** This theory was suggested as an alternate rationale in *Lamar v. Admiral Shipping Corp.,* 5 Cir. 1973, 476 F.2d 300. The result in *Lamar* apparently followed, however, because:

. . . Lamar and Miller [the injured longshoremen] stipulated that from their recover-

ies the medical and compensation payments received by them would be repaid to Liberty Mutual, free of any claim for attorneys' fees. 476 F.2d at 303.

**6.** If one-third of the gross recovery were deducted from plaintiff's net, the plaintiff would receive $5,981.65 minus $3,333.00 or $2,648.65. Thus, 56 per cent of his net recovery would go to attorney's fees, excluding litigation costs. The plaintiff's counsel has declined to charge such a fee, describing at oral argument such a fee as "grossly unjust."

*Rederi, G.M.B.H., SS Etha,* 2 Cir. 1977, 552 F.2d 466, the plaintiff won a jury verdict of $5,000.00, in a case in which the compensation carrier had already paid out $15,488.31. The court held that the attorney's fee should be paid first out of the gross recovery, but characterized its holding as a rule only of the priority of liens. Under the reasoning of *Valentino,* the attorney's fee, the compensation lien, and the longshoreman's net recovery should be viewed as successive claims on the gross verdict or settlement, to be subtracted from the fund in that order.[7] Thus, where the gross recovery is less than the compensation lien, the carrier pays the plaintiff's attorney in full; where the gross recovery is large enough to pay the plaintiff's attorney and to reimburse the compensation carrier fully, the plaintiff alone bears the legal costs. This analysis assertedly has the advantage of reconciling all LHWCA third-party cases to a single simple rule.

This measured, arithmetic ranking cannot be defended on equitable principles unless we view the longshoreman as the only party who is, for some reason, not entitled to the chancellor's consideration. Moreover, the single-rule advantage is illusory. The priority of liens theory offers a single formula for the resolution of all cases only if it is assumed that the attorney may charge the same amount, whether or not the compensation carrier shares in his fee, an amount presumably set by his contract with his client. Other courts that have considered this problem have assumed, at least implicitly, that the denial of any contribution by the carrier would leave the attorney with a lower fee than he would otherwise have realized.[8] The reason is clear: in many cases, as in this case, an attorney cannot justly charge the longshoreman a percentage of the gross recovery because the plaintiff's low net recovery would make such a result unconscionable.

We believe that the Second Circuit correctly applied the result in *Chouest* to the facts in *Valentino.* However, we now expressly decline to confine the *Melvin-Haynes-Chouest* rule to cases in which the gross recovery is too small to permit the plaintiff to pay his attorney at all or in full. Our concern rather is whether the plaintiff justly can be asked to bear alone a reasonable fee for his total recovery: when he cannot, the size of the gross recovery is only one factor to consider in determining the appropriateness of requiring the compensation lienor to contribute to a reasonable fee for plaintiff's counsel.

## II.

Two other circuits, viewing the policies underlying the LHWCA differently, have themselves recently come to opposite conclusions with respect to the problem here presented. The Fourth Circuit, in *Swift v. Bolten,* 4 Cir. 1975, 517 F.2d 368, held "the stevedore should be taxed with that part of a reasonable fee for the longshoreman's counsel as is proportioned to its share of the recovery," 517 F.2d at 370. *See also Brown v. American Mail Line, Ltd.,* D.Or.1977, 437 F.Supp. 628. The First Circuit, although observing that the Fourth Circuit's opinion might appropriately reflect "the normal dictates of equity," held that the allocation of attorney's fees sought in these cases is inconsistent with "the purposes and policies of the Act," *Cella v. Partenreederei MS Ravenna,* 1 Cir. 1975, 529 F.2d 15, 20, cert. denied, 1976, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799. We must disagree with the First Circuit's interpretation of the statute.

A determination of the proper distribution of a longshoreman's recovery in cases initiated under the LHWCA by the long-

---

7. *See also Fontana v. Pennsylvania R.R. Co.,* S.D.N.Y.1952, 106 F.Supp. 461, *aff'd per curiam sub nom. Fontana v. Grace Line, Inc.,* 2 Cir. 1953, 205 F.2d 151, *cert. denied,* 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390.

8. *See, e. g., Strachan Shipping Co. v. Melvin, supra,* 327 F.2d at 87 [Judge (now Chief Judge)

Brown, dissenting]; *Cella v. Partenreederei MS Ravenna,* 1 Cir. 1975, 529 F.2d 15, 21, *cert. denied,* 1976, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799: "True, [because of the court's holding] the attorney is forced to forego part of his fee which he would receive in an ordinary suit."

shoreman against a third-party tortfeasor has been left wholly to the courts. *Chouest, supra,* 472 F.2d at 1030. Section 33(a) of the Act, 33 U.S.C. § 933(a) expressly permits such third-party actions, and under Section 33(b):

Acceptance of . . . compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

33 U.S.C. § 933(b). The Act provides a formula for the distribution of the employer's recovery in suits he initiates in an injured longshoreman's name under Section 33(b); Section 33(e) provides:

Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:

(1) The employer shall retain an amount equal to—

(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or Board);

(B) the cost of all benefits actually furnished by him to the employee under section 7 [section 907 of this title];

(C) all amounts paid as compensation;

(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 7 [section 907 of this title], to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled

to compensation or to the representative; and

(2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer.

33 U.S.C. § 933(e). However, no such formula is provided when the longshoreman himself initiates suit under Section 33(a). Even the employer's equitable lien against a longshoreman's recovery, equal to those compensation payments he makes voluntarily and not under a formal award, is a judicial, rather than a legislative, creation. *Allen v. Texaco, Inc.,* 5 Cir. 1975, 510 F.2d 977, 979–980.

The judicial role in filling this statutory lacuna requires us to interpret the policies underlying the Act. The First Circuit in *Cella, supra,* concluded:

that the overriding purpose of the 1972 amendments [to the LHWCA] was to strictly limit the liability of the stevedore in order to husband its resources, and its insurance carrier's resources, for payment of the increased benefits under the Act.

529 F.2d at 20. It, therefore, denied any proration of attorney's fees because taxing the stevedore or its insurer with litigation costs would interfere with the "husbanding" of employers' compensation resources.

We think this analysis incomplete in at least three respects. First, the surest means of preserving workmen's compensation funds is the encouragement of proper third-party suits based on negligence. A policy of assuring just compensation for attorneys who represent plaintiffs in such actions should serve as an important safeguard for the eventual reimbursement of compensation payments made to a longshoreman injured through a third-party's negligence. *See Brown v. American Mail Line, Ltd., supra.*

Second, although the maintenance of adequate benefits is one of the Act's chief concerns, the "overriding purpose" of the LHWCA is the effective protection of injured employees. With respect to employ-

ees injured by third-party negligence, that purpose was furthered in 1959 by the elimination of the election of remedies requirement under 33 U.S.C. § 933(a). Act of August 18, 1959, P.L. 86-171. That purpose will similarly be furthered by assuring plaintiffs' attorneys just compensation, while protecting the plaintiffs themselves from undue expense in pursuing their damages remedy.

Finally, the formula adopted for the distribution of employers' recoveries in suits under Section 33(e) emphasizes the critical importance, even in employers' suits, of protecting employees' rights in cases of negligence. Section 33(e)(2) permits the employer to retain one-fifth of its net recovery after subtracting those expenses permitted under Section 33(e)(1). Although the formula is not explained in the legislative history of the original statute, of which this provision is a part, the Senate Committee on Labor and Public Welfare, in reporting on the 1959 amendments to the Act, said:

> . . . by giving the employer a reasonable (one-fifth) share in the net recovery an incentive is provided not to compromise a suit only for the amount of compensation but to protect the interests of the employee as much as possible.

S.Rep.No. 428, 86th Cong., 1st Sess., reprinted in [1959] U.S.Code Cong. & Admin. News, pp. 2134, 2135. Implicit in this interpretation are the twin goals of employee protection through the preservation of compensation funds and employee protection through appropriate recoveries from tortfeasors. Our holding that employers or their carriers may be required to contribute to a reasonable attorney's fee represents a proper balancing of these two kinds of employee protection.[9]

## III.

■■ In this case the plaintiff is entitled to some contribution by the employer's compensation carrier toward a reasonable fee for his attorney. The sole remaining issue is the calculation of the fee. This cannot be reduced to formula. It must be done by (a) fixing a total fee that would be reasonable under the circumstances of the case;[10] (b) determining the amount of the fee that plaintiff's counsel is entitled to receive from his client, taking into account the court's responsibility to supervise the reasonableness of any contingent fee; and, (c) determining to what extent the difference between a reasonable fee for the gross recovery and the attorney's fee paid by the plaintiff may justly be taxed against the compensation carrier. In reaching its last determination, the court should take into account the extent to which efforts of the carrier's own counsel contributed to securing the final recovery, and the respective recoveries of the plaintiff and the employer. Obviously, the carrier should in no case be charged with a greater portion of counsel's fee than the carrier's share of the gross recovery. We reiterate:

> . . . District Courts will exercise careful supervision over cases of this na-

---

**9.** Although we do not yet confront the question, we think our analysis applicable also to cases that may arise under 33 U.S.C. § 933(f).

**10.** In determining an appropriate counsel's fee, the court may appropriately rely on most of the factors set forth in Johnson v. Georgia Highway Express, Inc., 5 Cir. 1974, 488 F.2d 714, for the calculation of attorney's fees in civil rights cases. Clearly, some factors, such as the "undesirability" of the cause, will not likely be relevant elements in the calculation. However, the court may consider:

1. the time and labor required;
2. the novelty and difficulty of the questions;
3. the skill requisite to perform the legal service properly;
4. the preclusion of other employment by the attorney due to acceptance of the case;
5. the customary fee;
6. whether the fee is fixed or contingent;
7. time limitations imposed by the client or the circumstances;
8. the amount involved; and
9. the experience, reputation, and ability of the attorneys.

In run-of-the-mill cases, factors (1), (5), (8), and (9) will, of course, predominate. Our aim in setting forth these possible considerations is not to require formulistic adherence to any litany in guiding district courts towards equitable results in these cases.

ture and give proper consideration to the equitable principles involved, fully exercising such powers to prevent an unscrupulous attorney from profiting at the expense of litigants.

*Strachan Shipping Co. v. Melvin, supra,* 327 F.2d at 86. District Courts may also, in appropriate cases, tax litigation costs against a carrier in proportion to its recovery.

In adopting a *quantum meruit* approach to the calculation of an attorney's fee, we reject any formula under which the plaintiff's contract with counsel would automatically govern the terms of the compensation carrier's contribution to a reasonable fee.[11] There will thus be cases in which a plaintiff alone will still bear the full cost of his attorney; these are cases in which the longshoreman's net recovery will yield his counsel a reasonable fee for his efforts in securing the *gross* recovery, while not unduly burdening the plaintiff, given the amount of the plaintiff's *net* recovery. *Cf., Cella v. Partenreederei MS Ravenna, supra.* Although this approach may in some cases give a "free ride" to compensation carriers, the result is an appropriate compromise between the need to compensate attorneys justly and to conserve workmen's compensation funds. The course of equity must be set by the goal of justice, not by the pursuit of purposeless symmetry.

No one has here challenged the reasonableness of one-third of the gross recovery in this case as counsel's fee for his total effort. However, the lower court stated in its opinion that the compensation carrier "did furnish assistance which helped conclude a prompt settlement in Mr. Mitchell's favor." We remand the case for a calculation of the carrier's appropriate contribution to counsel's fee given whatever efforts were provided by carrier's counsel. The court may

require of the parties any affidavits or other evidence it thinks necessary to determine what gross fee is reasonable, and what contribution by the carrier is appropriate.

Accordingly, the order of the district court denying the plaintiff's motion for an assessment of attorney's fees on the compensation lien is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**11.** In *Strachan Shipping Co. v. Melvin, supra,* the lower court approved a 40 per cent fee for plaintiff's counsel not because of the terms of the plaintiff's contract but because, having considered the circumstances, the court determined 40 per cent to be a reasonable fee. 327 F.2d at 85. Similarly, although the court's suggested formula in *Chouest v. A & P Boat Rent-*

*als, Inc., supra,* 472 F.2d at 1035, embodied the assumption that a one-third contingent fee agreement governed the terms of the carrier's contribution to the attorney's fee; the choice of that hypothetical figure was in turn guided by the tacit assumption that a one-third gross figure would be a reasonable fee in that type of case.